This is a fraud case. Defendants Liberty National Life Insurance Company ("Liberty National") and its agent, Vicki Cheatham, appeal from a $20,000 judgment entered on a jury verdict in favor of the plaintiff, Lucille Sherrill. We affirm.
The following material facts were undisputed: On November 14, 1985, Vicki Cheatham went to the home of 64-year-old Lucille Sherrill and her 69-year-old husband, Luther Sherrill, Jr., and took an application for a $2,500 policy of life insurance from Mr. Sherrill, who was to be the named insured and owner of the policy. The following appears at the top of that application: "APPLICATION FOR MODIFIED BENEFIT LIMITED PAYMENT LIFE INSURANCE." Midway through the application, following the words "Ultimate Amount," the figure "2,500" is written in. At the bottom of the application, immediately above the applicant's signature line, *Page 273 
the following appears in bold print: "I UNDERSTAND FULLY THAT THIS POLICY HAS A MODIFIED DEATH BENEFIT FOR THE FIRST 3 POLICY YEARS." Mr. Sherrill, who was suffering from a debilitating illness, signed the application, with Ms. Sherrill's help in steadying his hand, and paid the initial premium. Ms. Sherrill was designated in the application as the beneficiary under the policy. Ms. Cheatham took the application with her when she left the Sherrills' home. On December 1, 1985, a "MODIFIED BENEFIT LIMITED PAYMENT LIFE POLICY," with Ms. Sherrill as the beneficiary, was issued to Mr. Sherrill and it was personally delivered to the Sherrills by Ms. Cheatham. The first page of the policy reads, in pertinent part, as follows:
INSURANCE BENEFIT — We insure you for the amounts shown in the table below if premiums are paid as provided under "Premiums". Terms used in the table are defined in the following paragraphs.
TABLE OF INSURANCE BENEFITS
YEARS POLICY IN FORCE AT DATE OF DEATH
Less Than 3 3 or More
Return of All Premium Paid With Ultimate
Death Benefits Interest at 10% Per Year* Face Amount
* If death occurs during the first 3 years that the policy is in
force, and if death is due to an accident, as defined in this policy, the
death benefit will be the ultimate face amount.
TEN-DAY FREE LOOK — Please examine your policy. Within 10 days after this policy is first received, it may be returned to us or to the agent through whom it was purchased. If returned, the policy will be as though it had never been issued. Any premiums paid will be returned.
Ms. Sherrill, who had a seventh-grade education and could read, put the policy with her other important papers, without reading it. Mr. Sherrill died on August 7, 1986. Ms. Sherrill filed a claim for benefits under the policy. Because Mr. Sherrill had died within three years of the issuance date of the policy, Liberty National refunded the premiums that had been paid, plus 10% interest.
Ms. Sherrill alleged in her complaint that Liberty National and Ms. Cheatham had fraudulently induced her husband to buy the policy by misrepresenting to both her and Mr. Sherrill that she, as the designated beneficiary under the policy, would receive $2,500 upon the death of Mr. Sherrill, regardless of the date of his death.[1] The defendants answered, denying that Ms. Cheatham in any way misled the Sherrills as to the nature of the coverage that was applied for. The case proceeded to trial, where the jury, which was instructed to consider not only the question of whether Ms. Cheatham had misrepresented the nature of the policy applied for, but also whether she had suppressed material information concerning the nature of the policy, see Rule 15(b), A.R.Civ.P. ("Amendments to Conform to the Evidence"), and whether Ms. Sherrill's reliance on these representations had been reasonable, returned a verdict in Ms. Sherrill's favor.
The defendants contend that because Ms. Sherrill never read the policy, she was precluded, as a matter of law, from recovering any damages for fraud, under the rationale ofTorres v. State Farm Fire Casualty Co., 438 So.2d 757 (Ala. 1983), and, therefore, that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict (JNOV).
Reasonable or justifiable reliance is an essential element of a fraud action — be it one based on an alleged misrepresentation of material fact, see Torres, or one based on an alleged suppression of material fact, see Kaye v. PawneeConstr. Co., 680 F.2d 1360 (11th Cir. 1982). Under the facts in this case, whether the reliance was reasonable or justified was for the trier of fact in accordance with the instructions given to the jury by the trial court as requested by Liberty National and Ms. Cheatham. That *Page 274 
is the law of the case. The jury found that the reliance was reasonable or justified. This verdict was not against the weight of the evidence. Therefore, the trial court did not err in overruling Liberty National's motion for a new trial on the ground that the verdict of the jury was against the weight of the evidence.
Did the court err in allowing Ms. Sherrill's counsel to question Mr. Robert L. Harrison, the district manager for Liberty National at the Decatur, Alabama, office regarding other law suits against Liberty National? Mr. Harrison was asked this question:
 "Q. Do ya'll ever discuss claims and lawsuits against Liberty National?"
At that time, the following objection was made:
 "Your Honor, I'm going to object to that. Any other claims or lawsuit against Liberty National hadn't got anything to do with the lawsuit."
After discussion at the bench, the trial court overruled the objection and allowed the following questions:
 "Q. All right. Are you aware of any cases brought against Liberty National?
 "A. Other than what I read in the newspaper. Are you saying claims or claims paid or lawsuits or what are you —
"Q. Let's say full blown lawsuits.
 "A. Okay. If I don't read it in the public paper, I do not know about it.
 "Q. Have you heard of Grimes versus Liberty National Insurance Company?
"A. Grimes?
"Q. Yes.
"A. No sir.
 "Q. Decided in Alabama Supreme Court last September?
"A. No sir.
"Q. That's never been discussed?
"A. No.
 "Q. What about Ex parte Liberty National Life Insurance Company —"
Again the defendants' attorney made the following objection:
 "Your Honor, I'm going to object. He said he didn't know about any of them and Mr. Bernauer is just going through these trying to prejudice the jury.
"The Court: Overruled.
 "Q. What about Archey [sic, Archie] versus Liberty National Life Insurance Company, a 1984 Supreme Court [of] Alabama case?
"A. Are you saying Archer?
"Q. Archey [Archie] versus Liberty National Life?
"A. I'm not aware of that.
 "Q. Well, I don't want to prejudice this jury. I'm not going to go through all these, but you never heard of any other claims or lawsuits against Liberty National with regard to their alleged fraud and misrepresentation, is that your testimony?"
We will not hold that the trial court committedreversible error for refusing to sustain the defendants' objections to these two questions for the reasons stated in the objection. "[A]ny other claims or lawsuit against Liberty National hadn't got anything to do with the lawsuit" was the reason given for the objection to the question "Do ya'll ever discuss claims and lawsuits against Liberty National?" At that time, it was not clear that Ms. Sherrill's lawyer was attempting to elicit testimony concerning any claim or lawsuit other than the suit at issue.
The second objection was based on the witness's testimony that he did not know anything about any of the lawsuits that he had been questioned about and that objection included a comment that Ms. Sherrill's attorney "is just going through these trying to prejudice the jury." The defendants do not contend that their objection that the witness did not know anything about the lawsuits about which he had been questioned was ground for reversal.
"The trial court's overruling of a specific objection will be affirmed on appeal unless the evidence admitted was subject to such specific objection." C. Gamble, McElroy's Alabama Evidence
(3d ed. 1977) § 426.01(13) at 803. *Page 275 
Was Ms. Sherrill's reliance unreasonable or unjustified as a matter of law?
Because this action was pending on June 11, 1987, Ala. Code 1975, § 12-21-12, does not apply and the "scintilla rule" is applicable. In Hood v. Murray, 547 So.2d 75 (Ala. 1989), this Court, quoting Caterpillar Tractor Co. v. Ford, 406 So.2d 854,856 (Ala. 1981), reiterated the well-established standard of review for a directed verdict applying the "scintilla rule," as follows:
 " 'A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214
(Ala. 1978). . . .
 " 'In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977).' "
In the present case, the jury could have found that Ms. Sherrill went for approximately eight months under the misapprehension that she would be entitled to receive $2,500 under the policy regardless of her husband's date of death. This misapprehension was allegedly brought about by what Ms. Cheatham said, or did not say, at the time the application was completed and/or at the time the policy was delivered. In any event, Ms. Sherrill never read the application or the policy. Ms. Sherrill could read, and her seventh-grade education alone does not create an inference that she could not have understood the policy had she read it. See Traylor v. Bell, 518 So.2d 719
(Ala. 1987). The first page of the policy clearly reveals its terms, and had she read that page Ms. Sherrill would have realized that her right to receive the $2,500 was contingent on her husband's surviving for three years from the issuance date of the policy. In addition, the policy also provided on that page for a "TEN-DAY FREE LOOK," whereby the policy could have been returned within 10 days of its receipt with a full refund of the initial premium.
Even so, we cannot hold that there was an unreasonable or an unjustified reliance on the representations of Ms. Cheatham as a matter of law. Mr. Sherrill was extremely ill when the application was taken and at all times between then and the date of his death. Ms. Sherrill's testimony as to what Ms. Cheatham told Mr. and Mrs. Sherrill and how she told it makes it a jury question as to whether Ms. Sherrill's reliance was reasonable or justified:
 "[W]hen he [Mr. Sherrill] told her [Ms. Cheatham] we weren't able to buy she got up and she put one hand on one arm of his chair and one on the other and she looked him right in the face. I won't ever forget that, and said, 'Mr. Sherrill, this $2,500 would help Ms. Sherrill if you was to die.' He looked her right in the eye believing every word she said and said 'Hon, go get the checkbook, and we'll take it.' "
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Ms. Sherrill had standing to bring this action. See NorthCarolina Mutual Ins. Co. v. Holley, 533 So.2d 497 (Ala. 1988);National States Ins. Co. v. Jones, 393 So.2d 1361 (Ala. 1980).