Alfa Mutual Insurance Company ("Alfa") appeals from a judgment entered on a $303,057.60 jury verdict in favor of Steve Northington, in this action for damages for breach of contract and fraud. After carefully reviewing the record and the excellent briefs of the parties, we affirm.
The evidence, viewed in a light most favorable to Northington, reveals the following material facts: Northington purchased from Alfa a homeowner's insurance policy covering a mobile home. The insurance application that Northington signed specifically stated that he was applying for $30,000 coverage on his mobile home, for a premium of $309. The application did not reflect that Northington had applied for a policy that would cover a loss due to theft of personal property from his mobile home. However, Nancy Bush, an agent for Alfa, assured Northington that the policy that he was applying for would "automatically" provide coverage for such a loss in an amount not exceeding one-half of the coverage on the mobile home, or $15,000. The policy that Northington later received stated that insurance was provided only with respect to the coverages that were indicated on the declarations page by a specific premium or policy limit applicable thereto. The declarations page of Northington's policy did reflect that a premium of $309 had been paid for, and that a policy limit of $30,000 was applicable to, coverage for damage done to the mobile home. The declarations page did not reflect that a specific premium had been paid for, or that a policy limit was applicable to, coverage for a loss due to theft of personal property from the mobile home. Northington telephoned Ms. Bush to confirm that he did have coverage on his personal property, and she reassured him that he did. Thereafter, someone burglarized Northington's mobile home, causing damage to a door. Certain items of personal property were also stolen during the burglary. Shortly after discovering the break-in, Northington spoke with Ms. Bush and advised her of the structural damage to the mobile home and of the theft of his personal property. Ms. Bush informed Northington that the structural damage was covered under his policy. However, Ms. Bush told Northington that, contrary to what he believed, the policy that he had purchased did not cover the loss of his personal property. Northington filed suit against Alfa eight days after the burglary. As of the date that the suit was filed, Northington had received no payment from Alfa.
With regard to his contract claim, Northington alleged that Alfa had breached its contract with him by failing to pay him for the structural damage that was done to his mobile home. He also alleged that Ms. Bush, in her capacity as an agent for Alfa, had orally bound Alfa in contract to cover the loss of his personal property and, therefore, that Alfa had breached its contract by refusing to pay him for the loss of his personal property. With regard to his fraud claim, Northington alleged that Ms. Bush had misrepresented to him at the time he purchased the policy that his personal property was covered and that he had *Page 1043 
relied on that misrepresentation to his detriment. Northington sought to recover compensatory damages for breach of contract, including damages for mental anguish. He sought to recover both compensatory and punitive damages for fraud. Prior to the submission of the case to the jury, Alfa had moved for a directed verdict as to each of Northington's claims. The motion was denied. After hearing much conflicting evidence, largely concerning the oral negotiations that took place between Ms. Bush and Northington prior to Northington's purchasing the policy, the jury returned a general verdict for compensatory damages in the amount of $3,057.60 and a special verdict for punitive damages in the amount of $300,000. Alfa's motion for a judgment notwithstanding the verdict or, in the alternative, new trial, as to each claim was later denied.
The following issues are presented for our review:
 1. Whether the trial court erred in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict on Northington's claim for breach of contract;
 2. Whether the trial court erred in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict on Northington's fraud claim;
 3. Whether Alfa was entitled to a new trial on the ground that the trial court erred in instructing the jury that damages for mental anguish were recoverable upon its finding that Alfa was guilty of a breach of contract;
 4. Whether Alfa was entitled to a new trial on the ground that the verdict is inconsistent as a matter of law;
 5. Whether Alfa was entitled to a new trial on the ground that the award of punitive damages was in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13, of the Alabama Constitution;
 6. Whether Alfa was entitled to a new trial on the ground that the award of punitive damages was excessive.
 1. Whether the trial court erred in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict on Northington's claim for breach of contract.
Alfa contends that it was entitled to a judgment as a matter of law on Northington's claim for breach of contract because, it says, the undisputed evidence showed that it did not breach its contract. Alfa argues that Northington never submitted to it a sworn proof of loss, as required under the policy, and, therefore, that it was never under any obligation to make a payment under the policy for the structural damage to the mobile home. Alfa also argues that any oral negotiations that may have occurred between Ms. Bush and Northington concerning coverage for personal property were merged into the written policy and, consequently, that there was "no legal evidence of any oral contract upon which [Northington could] base a claim for the breach thereof."
Our review of the record reveals that Alfa did not move for a directed verdict on the ground that Northington had failed to comply with a condition precedent under the policy (i.e., that Northington had failed to provide Alfa with a sworn proof of loss). Accordingly, Alfa waived its right to have this issue considered on appeal. Great Atlantic Pacific Tea Co. v.Sealy, 374 So.2d 877 (Ala. 1979).
The record does show that Alfa moved for a directed verdict and for a judgment notwithstanding the verdict on the ground that any oral negotiations that might have occurred between Ms. Bush and Northington concerning coverage for loss of personal property were merged into the written policy and, therefore, that there was "no legal evidence" to support Northington's claim that Alfa was contractually bound to cover the loss of his personal property. The record also shows, however, that Northington sought to introduce the testimony concerning the oral negotiations for the purpose of proving the terms of his contract with Alfa and that the testimony *Page 1044 
was admitted into evidence without any objection.
In Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431,434 (Ala. 1979), this Court, quoting 3A Corbin, Contracts, § 573 at 357 (1960), stated as follows:
 " 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' 3A Corbin, Contracts, § 573, at 357 (1960), cited in Richard Kelley Chevrolet Co., Inc. v. Seibold, 363 So.2d 989, 993 (Ala.Civ.App. 1978)."
The parol evidence rule is based upon the idea that a completely integrated writing, executed by the parties, contains all of the stipulations, engagements, and promises that the parties intended to make, and that all of the previous negotiations, conversations, and parol agreements are merged into the terms of the instrument. Hibbett Sporting Goods, Inc.v. Biernbaum, supra. In Alabama, however, it has been generally recognized that parties to a lawsuit may try their case on evidence that would otherwise be inadmissible upon proper objection and that where evidence violative of the parol evidence rule is admitted without objection, it may be considered and allowed such force and effect as its weight entitles it in construing the agreement of the parties. SeeState ex rel. Elmore v. Leveson, 207 Ala. 638, 93 So. 608
(1922); Vinyard v. Duck, 278 Ala. 687, 180 So.2d 522 (1965);Mersereau v. Whitesburg Center, Inc., 47 Ala. App. 146,251 So.2d 765 (Ala.Civ.App. 1971). But see Annot., 81 A.L.R.3d,Modern Status of Rules Governing Legal Effect of Failure toObject to Admission of Extrinsic Evidence Violative of ParolEvidence Rule, 249 (1977), for a collection of cases from other jurisdictions holding differently. Because the testimony concerning the oral negotiations between Ms. Bush and Northington was admitted into evidence without objection, the trial court did not err in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict.
 2. Whether the trial court erred in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict on Northington's fraud claim.
Alfa contends that it was entitled to a judgment as a matter of law on Northington's fraud claim because, it says, the undisputed evidence showed that Northington could not have reasonably or justifiably relied on any statements that may have been made by Ms. Bush concerning coverage for loss of personal property. Alfa argues that the insurance application clearly indicated that Northington was applying only for coverage for damage to his mobile home, not for coverage for loss of personal property. Alfa also asserts that the written policy that Northington later received clearly revealed that loss of personal property was not covered under the policy. Alfa also contends that the evidence was insufficient to sustain an award of punitive damages for fraud. Northington concedes that he read both the application and the declarations page of the policy. He argues, however, that those documents were not sufficient to apprise him of the falsity of Ms. Bush's representation that coverage for loss of personal property would "automatically" be provided under the policy in an amount not exceeding one-half of the coverage on the mobile home. Northington takes the position, therefore, that a fact question was presented as to whether his reliance on Ms. Bush's representations was reasonable or justifiable under the circumstances. Northington also argues that the evidence was sufficient to sustain an award of punitive damages. We agree.
This lawsuit was pending on June 11, 1987; therefore, the "scintilla of evidence rule" is applicable. Ala. Code 1975, § 12-21-12. The standard for reviewing a motion for directed verdict, applying that rule, is as follows:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of *Page 1045 
fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). . . .
 "In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977)."
Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981).
Although Alfa has framed the issue in terms of whether Northington could have reasonably or justifiably relied on any of Ms. Bush's representations concerning personal property coverage and whether there was support in the evidence for the award of punitive damages, because of the interrelationship between the elements of a cause of action for fraud we discuss all of the elements of Northington's fraud claim.
Ms. Bush owed a duty to Northington to speak the truth.Colonial Bank of Alabama v. Ridley Schweigert, 551 So.2d 390,396 (Ala. 1989) ("[d]uty is an essential element of fraud"). See, also, George v. Federal Land Bank of Jackson,501 So.2d 432 (Ala. 1986). A person owes a duty not to make a misrepresentation to those to whom he intends, for his own purposes, to reach and influence by the representation, or to those to whom he has a public duty created by statute or pursuant to a statute. Colonial Bank of Alabama v. Ridley Schweigert, supra, at 396 ("No 'agent . . . shall knowingly make a false or fraudulent statement or representation in, or relative to, an application for insurance,' " quoting Ala. Code 1975, § 27-12-23). The record shows that there was at least a scintilla of evidence tending to show that Ms. Bush orally misrepresented to Northington that his personal property would be covered under the policy.[1] Likewise, there was at least a scintilla of evidence tending to show that that misrepresentation involved a material existing fact, which is the " 'foundation stone' of a cause of action for misrepresentation/fraud." Lawson v. Cagle, 504 So.2d 226, 228
(Ala. 1987). A material fact is one that would induce someone to act. Lawson v. Cagle, supra; Bank of Red Bay v. King,482 So.2d 274 (Ala. 1985). The evidence tended to show that Ms. Bush misrepresented the extent of coverage under the policy in order to induce Northington to act (i.e., to purchase the policy), that the misrepresentation was "acted on" by Northington, Ala. Code 1975, § 6-5-101, and that Northington did "act to his injury," Ala. Code 1975, § 6-5-103. The phrases "acted on" and "act to his injury" have been judicially interpreted as "relied upon"; and this Court has held that a person has not acted on a representation unless he has "reasonably" (see Southern States Ford, Inc. v. Proctor,541 So.2d 1081 (Ala. 1989)) or, as stated more recently, "justifiably" (see Hickox v. Stover, 551 So.2d 259 (Ala. 1989)), relied upon the representation.
We are not persuaded by Alfa's argument that, as a matter of law, Northington could not have relied on any of Ms. Bush's oral representations because those representations were followed by the execution of an insurance application and the issuance of a written policy. It is true, as Alfa contends, that a person has a duty to read what he signs. It is also true that a cause of action for "fraud or misrepresentation cannot be predicated upon a verbal statement made before the execution of a written contract where a provision in that contract contradicts the verbal statement." See Tyler v. Equitable LifeAssurance Society of the United States, 512 So.2d 55, 57 (Ala. 1987), where this Court held that it was not reasonable for the plaintiffs to rely on an alleged representation that had been made prior to the execution of, and that *Page 1046 
was contradicted by, a note and mortgage. Therefore, as a matter of law, a person with the ability to read and to understand the nature of the transaction cannot act on an oral representation when that representation is followed by an executed document that contradicts it. In the present case, however, there was at least a scintilla of evidence tending to show that the misrepresentation that was made by Ms. Bush to Northington was not discoverable by Northington upon his reviewing the documents in question. The jury could have found from the evidence that Ms. Bush represented to Northington that personal property would "automatically" be covered under the policy in an amount not exceeding one-half of the coverage on the mobile home, and that Northington could have reasonably inferred from that representation that it was not necessary for the application or the policy to reflect that a specific premium had been paid for, or that a policy limit was applicable to, coverage for loss of personal property. The evidence showed that even after Northington received his policy, and he concedes that he read the declarations page of the policy, he contacted Ms. Bush to confirm that he did have coverage on his personal property and that she reassured him that he did. Thus, this case is distinguishable from Tyler v.Equitable Life Assurance Society of the United States, supra, and is more like Liberty National Life Ins. Co. v. Sherrill,551 So.2d 272 (Ala. 1989), where this Court held that it was not unreasonable as a matter of law for Ms. Sherrill to rely on the oral representations of the agent when the application that was signed by Mr. Sherrill, with Ms. Sherrill's help, did not clearly contradict the oral representations.
Likewise, we are not persuaded that the evidence was insufficient to support an award of punitive damages. It is well settled that if there is evidence from which the jury can reasonably infer an intent to deceive or defraud, then punitive damages are recoverable. American Honda Motor Co. v. Boyd,475 So.2d 835 (Ala. 1985). In the present case, the jury could have found from the evidence that Ms. Bush intentionally misrepresented the extent of the coverage under the policy in order to induce Northington to purchase the insurance.
The trial court did not err in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict, because, as the foregoing discussion illustrates, there was at least a scintilla of evidence tending to show that Northington was damaged as a result of his acting upon an intentional misrepresentation of a material fact made by Alfa through its agent, who owed a duty to him to speak the truth. We cannot hold that, as a matter of law, Northington was prevented by the existence of any writing from acting upon the representation. It was within the province of the jury to determine whether the documents that were presented to Northington were sufficient to cause him to doubt the truth of the oral representation that had been made by Ms. Bush.
 3. Whether Alfa was entitled to a new trial on the ground that the trial court erred in instructing the jury that damages for mental anguish were recoverable upon its finding that Alfa was guilty of a breach of contract.
Alfa contends that the trial court erred in instructing the jury that it could award Northington damages for mental anguish on his breach of contract claim and, accordingly, that the trial court erred in denying its motion for a new trial. We disagree.
The trial court instructed the jury that it could award Northington damages for mental anguish if it found that Alfa had breached its contract. Alfa objected to that instruction. It is important to note that Alfa does not contend on appeal that damages for mental anguish were an improper measure of recovery because they were sought for breach of a contract. The essence of Alfa's argument is that the trial court's instruction was erroneous because the evidence was insufficient to support an inference by the jury that Northington suffered any mental anguish. Drawing on our previous discussion of Northington's fraud claim, we believe that the jury could *Page 1047 
have reasonably inferred that Ms. Bush intentionally misrepresented the extent of coverage under the policy in order to induce Northington to purchase the insurance and that, subsequent to the break-in, Northington found himself in the position of having to hire an attorney to file suit to recover his loss. It would not have been difficult for the jury to find that Northington had suffered mental anguish.
 4. Whether Alfa was entitled to a new trial on the ground that the verdict is inconsistent as a matter of law.
Alfa contends that the verdict is inconsistent as a matter of law and, consequently, that the trial court erred in denying its motion for a new trial. Again, we disagree.
Alfa argues that the jury found in favor of Northington on his fraud claim and on his breach of contract claim to recover damages arising out of the loss of his personal property. Alfa asserts that it was inconsistent for the jury to award Northington damages under his contract claim and at the same time award him damages for fraud on the basis that he had been misled into believing that he had personal property coverage. Alfa's argument is predicated, however, on an erroneous assumption — that this Court will presume that the jury found for Northington on both of his claims. The trial court instructed the jury that it could award punitive damages only if it found in Northington's favor on his fraud claim. It is apparent to us, by the award of punitive damages, that the jury found for Northington on his fraud claim. Although we cannot discern from the record the basis upon which the jury made its award of compensatory damages, and, thus, whether the jury awarded any damages to Northington on his contract claim, we believe that the trial court's instructions were sufficient to apprise the jury that Northington was pursuing alternative, inconsistent theories of recovery, and we will presume that the jury, exercising common sense, returned a verdict consistent with those instructions. See Empiregas, Inc. of Ardmore v.Hardy, 487 So.2d 244 (Ala. 1985), cert. denied, 476 U.S. 1116,106 S.Ct. 1973, 90 L.Ed.2d 657 (1986).
 5. Whether Alfa was entitled to a new trial on the ground that the award of punitive damages was in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13, of the Alabama Constitution.
Alfa contends that the award of punitive damages in this case violated its right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, § 13, of the Alabama Constitution and, therefore, that the trial court should have granted its motion for a new trial. The thrust of Alfa's argument is that the trial court failed to provide the jury in its oral charge with any meaningful standards by which a proper award of punitive damages could be made. The record shows that Alfa raised the issue of the constitutionality of an award of punitive damages early in the litigation in its motion to dismiss and in its answer. The issue is also reflected in the pre-trial order. However, Alfa neither objected to the trial court's oral charge on this ground nor submitted any requested written instructions to the trial court purporting to set out any particular standards that would aid a jury in assessing an award of punitive damages. This Court cannot undertake to review the propriety of a trial court's oral charge unless that charge has been timely objected to and the objection has been overruled by the trial court, or a requested written jury instruction has been refused by the trial court. There is no ruling by the trial court for us to review on the issue of the constitutionality vel non of punitive damages, and the trial court's oral charge became the law of the case. Rule 51, A.R.Civ.P. The trial court did not err in denying Alfa's motion for a new trial on this ground.
 6. Whether Alfa was entitled to a new trial on the ground that the award of punitive damages was excessive.
Finally, Alfa contends that it was entitled to a new trial on the ground that the award of punitive damages was excessive. It argues now, as it did to the trial *Page 1048 
court, that the award of $300,000 under the facts of this case was clearly the result of bias, passion, prejudice, corruption, or some other improper motive on the part of the jury. In its order denying Alfa's motion for a new trial, the trial court stated as follows:
 "The Jury was extremely attentive during the trial of the case. They had an opportunity to observe the demeanor of each of the witnesses and did not base their verdict on bias, passion or prejudice.
 "The Jury's award of compensatory and punitive damages is not contrary to the evidence or law presented nor was it excessive.
". . . .
 "This Court is of the opinion that the Jury's verdict is correct, reasonable and justified according to the evidence presented."
It has long been the rule in Alabama that jury verdicts carry with them a presumption of correctness, and that this presumption is strengthened when the trial court denies a motion for new trial. American Honda Motor Co. v. Boyd, supra. We have carefully reviewed the jury's award of punitive damages in this case, pursuant to the guidelines discussed in Green OilCo. v. Hornsby, 539 So.2d 218 (Ala. 1989), and we are not convinced that the jury's award of $300,000 was excessive.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] The testimony concerning the oral representations was not objected to by Alfa on the ground that it violated the parol evidence rule or that the oral representations were merged into the written application and policy. When a party seeks to recover damages, in lieu of trying to set aside or void a subsequent document allegedly induced by oral misrepresentations, testimony concerning the oral representations that is clearly contradicted by the written document may be subject to objection and exclusion under the parol evidence rule.