574 So.2d 706 (1990)
Robert E. DIXON
v.
SOUTHTRUST BANK OF DOTHAN, N.A., and Pierce Flatt.
89-608.
Supreme Court of Alabama.
September 21, 1990.
Rehearing Denied January 11, 1991.
William B. Jackson II and James E. Atchison of Hess, Atchison & Horne, Mobile, for appellant.
James D. Farmer of Farmer & Farmer, Dothan, for appellees.
*707 HORNSBY, Chief Justice.
SouthTrust Bank of Dothan, N.A. ("SouthTrust"), sued Robert Dixon for payment on a promissory note that he had co-signed with Gary and Karen DeKay, which was in default. Dixon counterclaimed against SouthTrust and filed a third-party complaint against SouthTrust's chief executive officer, Pierce Flatt, alleging fraud. Prior to trial on SouthTrust's suit on the debt, the trial court entered summary judgment for SouthTrust and Flatt on the fraud claim; Dixon appealed. We reverse.
Karen and Gary DeKay wanted to purchase Louise Interiors, Inc., from its owner. Initially the DeKays attempted to finance their purchase of the business themselves through SouthTrust. Flatt advised the DeKays that they would need someone with more collateral to co-sign with them on the promissory note. The DeKays approached Robert Dixon about helping them to finance the purchase of the business. After some initial discussions with Flatt regarding what financing conditions would be acceptable, Dixon agreed to help the DeKays finance the purchase of the business.
On September 17, 1980, Dixon and the DeKays met with Flatt, at Flatt's SouthTrust office, for the purpose of executing the promissory notes, personal guarantees, and security agreements related to financing the purchase of Louise Interiors, Inc. Flatt handed Dixon various documents, including two promissory notes, a security agreement, and a personal guaranty agreement in favor of SouthTrust. These documents listed as security for the loan the inventory, the accounts receivable, all furniture and fixtures, and the stock of Louise Interiors, Inc., as well as certain of Dixon's certificates of deposits. These documents, however, did not contain any mention of what, if any, of the DeKays' personal property secured the loan.
We note that the facts are disputed regarding what was said between Dixon and Flatt about the use of the DeKays' personal property as security. Because this is an appeal from a summary judgment, all doubts concerning the existence of a genuine issue of material fact will be resolved in favor of the nonmovant, Dixon. Kizziah v. Golden Rule Ins. Co., 536 So.2d 943, 945 (Ala.1988). Dixon alleges that he planned only to invest in the business, not to manage it. Dixon also alleges that he told Flatt that he would co-sign the notes only if the DeKays used a significant amount of their personal property as security for the financing. Dixon explained to Flatt that his reason for insisting upon this condition was that he did not want to enter into any financing agreement unless the DeKays put up a significant amount of their property as security to serve as an incentive for them to manage the business in a sound manner.
After reading over the loan documents, Dixon refused to sign them because the documents that Flatt had given him did not mention any of the DeKays' personal property as security for the loan. Dixon then asked Flatt specifically what personal property SouthTrust held as security for the loan. The alleged fraud in this case occurred when Flatt assured Dixon that SouthTrust held the DeKays' homes, automobiles, boat, jewelry, furs, and antiques as collateral. Dixon claims that he then signed the loan documents, in reliance upon Flatt's assurance that SouthTrust had indeed secured the loan with those items. However, SouthTrust had not secured the loan with any of the DeKays' personal property. Dixon alleges that the only reason he signed the documents was Flatt's assurances that the loan was secured with the DeKay's personal property.
Subsequently, Louise Interiors, Inc., ceased doing business and the note went into default. The assets of Louise Interiors, Inc., were sold at a liquidation sale, pursuant to the security agreement executed by Flatt, Dixon, and the DeKays on September 17, 1980. The proceeds derived from that sale, and the certificates given by Dixon as security, were insufficient to satisfy the debt. SouthTrust then called upon Dixon and the DeKays to pay the balance due on the note. After they refused *708 to do so, SouthTrust sued them in the Circuit Court of Houston County.
Shortly thereafter, the DeKays filed a suggestion of bankruptcy in the trial court, and they were later dismissed from the suit. Dixon filed a counterclaim against SouthTrust, alleging that Flatt, as agent for SouthTrust, had fraudulently induced him to sign the loan documents. Dixon also filed a third-party complaint against Flatt personally. SouthTrust and Flatt moved for summary judgment on three grounds: First, that the statute of limitations barred Dixon's fraud claim; second, that evidence of Flatt's representations was inadmissible as parol evidence; and third, that Dixon's reliance on Flatt's representations was unjustified.
The trial court entered summary judgment in favor of SouthTrust and Flatt, without stating its reasons, and certified the judgment as final pursuant to Rule 54(b), A.R.Civ.P. This appeal followed.
Because Dixon's claims were pending on July 11, 1987, the applicable standard of review is the "scintilla rule." Ala.Code 1975, § 12-21-12. Summary judgment is proper only where there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. Kizziah v. Golden Rule Ins. Co., 536 So.2d 943 (Ala.1988). Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the nonmovant must show that there is at least a scintilla of evidence in his favor. Rutley v. Country Skillet Poultry Co., 549 So.2d 82 (Ala.1989).
Prior to January 9, 1985, the statutory period of limitations applicable in a fraud action was one year, as provided by Ala.Code 1975, § 6-2-39.[1] A claim for fraud accrues at the time of "the discovery by the aggrieved party of the fact constituting fraud." § 6-2-3. Dixon signed the loan documents on September 17, 1980. However, the evidence in the record would support a finding by a jury that Dixon learned that SouthTrust had no security interest in any of the DeKays' personal property only after the DeKays had filed for bankruptcy in June 1982. Therefore, a jury could have found that Dixon did not discover the facts constituting the fraud until June 1982, and that the statutory limitations period did not begin to run until that date. Dixon filed this fraud claim on September 26, 1982. Consequently, a jury could find that Dixon's fraud claim was filed well within the one-year period allowed by the statute of limitations.
SouthTrust and Flatt also argue that the parol evidence rule prohibits introduction of any evidence of Flatt's alleged misrepresentations. Dixon's counterclaim and third-party complaint allege that Flatt fraudulently induced him into signing the loan documents. Under Alabama law, an action alleging fraud in the inducement is an action in tort, and in such a case the parol evidence rule does not apply. In Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746, 748 (Ala.1990), this Court stated that in Alabama the parol evidence rule applies to actions in contract and not actions in tort, and that parol evidence is admissible to show that a written agreement was procured by fraud. Id. at 748.
We have long made this distinction between tort and contract actions. The law in Alabama concerning the admissibility of evidence regarding fraudulent representations employed to obtain assent to a contract has been correctly stated as follows:
"On the issues of whether a contract is void, voidable or reformable because of illegality, fraud, mistake or any other reason and whether the parties assented to a particular writing as the complete and accurate integration of their contract, there is no parol evidence rule to be applied. On these issues no relevant evidence, parol or otherwise, is excluded. *709 No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be. No one of the issues can be determined by mere inspection of the written document. See 3 A. Corbin Contracts, § 573 at 630 (1960). Accord, Battery Steamship Corp. v. Refineria Panama, S.A., 513 F.2d 735 (2d Cir.1975)."
Richard Kelly Chevrolet Co. v. Seibold, 363 So.2d 989, 993 (Ala.Civ.App.1978) (emphasis added). See Crispell v. Sunbelt Chrysler Plymouth, Inc., 544 So.2d 939 (Ala.1989); and Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1957).
The law in Alabama has traditionally allowed an aggrieved party wide latitude in proving fraud. The public policy behind this rule is that a party who has been the victim of fraud should not be denied redress simply because he justifiably relied upon the representations of someone who turned out to be misrepresenting the facts. Dixon's evidence regarding SouthTrust's representations is therefore not barred by the parol evidence rule.
SouthTrust and Flatt also argue that Dixon could not have justifiably relied upon any of Flatt's alleged representations because they were contrary to the documents that Dixon signed. In Hickox v. Stover, 551 So.2d 259 (Ala.1989), this Court set forth the standard by which a person's reliance on a fraudulent representation will be assessed:
"In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"`[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."'"
Id. at 263 (quoting Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1092 (Ala. 1989) (Hornsby, C.J., concurring specially). This Court has abandoned the standard of "reasonable reliance," whereby a party making a false statement was not liable in a fraud action if the person defrauded had not acted "reasonably" in relying on the fraudulent statementi.e., if the plaintiff, having had reason to suspect a fraud, had not investigated to ascertain the truth of the statement.
In this case none of the documents that Dixon signed purported to even address the issue of what, if any, of the DeKays' personal property secured the loan. Flatt's representations could not have been patently or obviously false because there was nothing in the documents to contradict his representations. Therefore, Dixon could have justifiably relied upon Flatt's representations concerning the use of the DeKays' personal property as security for the loan in determining whether to enter into the financing arrangement. We conclude that all of the alleged misrepresentations are material and that they are admissible as to Dixon's fraud claim. Based on the foregoing analysis, we reverse the grant of partial summary judgment in favor of SouthTrust and Flatt and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, SHORES, ADAMS and KENNEDY, JJ., concur.
HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
Because I would affirm the judgment in this case, I respectfully dissent.
Both of the promissory notes signed by Dixon read, in pertinent part, as follows:
"The obligors shall be jointly and severally liable for all indebtedness represented by this note and have subscribed their names hereto without condition that anyone else should sign or become bound hereon and without any other condition *710 whatever being made." (Emphasis added.)
In addition, the personal guaranty agreement that he signed provided, in pertinent part, as follows:
"The undersigned hereby waives acceptance of this guaranty by the Bank and agrees that this guaranty shall be valid and binding upon the undersigned when delivered to said Bank by anyone having the possession hereof, and that such liability is not conditioned on the execution of this guaranty by any other person or upon the occurrence of any other event." (Emphasis added.)
Dixon was an intelligent businessman and was not prevented in any way from reading these loan documents.
SouthTrust Bank and Flatt moved for a summary judgment, relying primarily on the loan documents, the two depositions given by Dixon, and the affidavit of Flatt. SouthTrust and Flatt argued, among other things, that the undisputed facts showed that they were entitled to a judgment as a matter of law. Dixon opposed the motions, relying primarily on his depositions, his own affidavit, and the depositions of the DeKays. SouthTrust and Flatt objected to Dixon's affidavit and certain portions of the depositions on which he relied,[2] on the ground that they were not admissible evidence and, therefore, that they were in violation of Rule 56, A.R.Civ.P. Dixon contends, among other things, that the trial court erred in entering the summary judgment, because, he says, he presented sufficient evidence, i.e., at least a "scintila," to establish a prima facie case of fraud in the inducement. SouthTrust and Flatt argue now, as they did in the trial court, that they were entitled to a judgment as a matter of law. They maintain that the undisputed facts show that proof as to at least one of the elements of Dixon's claims is missing. After carefully reviewing the record and the briefs of the parties, I am persuaded that the trial court properly entered the summary judgment. As the following discussion will show, my conclusion in this regard is based upon my determination that there is no genuine issue of material fact as to one of the elements of Dixon's fraud claimsi.e., that it is clear that one of the elements could not be proven at trialand, therefore, that SouthTrust and Flatt were entitled to a judgment as a matter of law. Accordingly, I pretermit any discussion of the other issues raised by the parties.
The elements of actionable fraud based on a false representation are: (1) a duty to speak the truth; (2) a false representation of a material fact made intentionally, recklessly, or innocently; (3) action upon the false representation by the plaintiff; and (4) damages proximately resulting from the false representation. Salter v. Alfa Insurance Co., 561 So.2d 1050 (Ala.1990); Alfa Mutual Insurance Co. v. Northington, 561 So.2d 1041 (Ala.1990).
The promissory notes, along with the personal guaranty agreement signed by Dixon, were introduced by SouthTrust and Flatt in support of their motions for summary judgment; they made a prima facie showing that Dixon did not act upon any representations that may have been made by Flatt concerning the amount of collateral that was to be provided by the DeKays. By signing those documents, Dixon acknowledged that there were no conditions to his incurring the debt. After this prima facie showing was made, the burden shifted to Dixon to show by admissible evidence that a genuine issue of material fact existed. Perry v. Mobile County, 533 So.2d 602 (Ala.1988). Horner v. First National Bank of Mobile, 473 So.2d 1025, 1027 (Ala.1985) ("[i]t is not enough that the opposing party merely disputes or refutes an immaterial fact, nor is it enough that evidence which is inadmissible ... is advanced to contravene that of the movant").
Dixon relied primarily on his own depositions and on the depositions of the DeKays to establish a triable issue of fact. In his *711 depositions, Dixon testified that he had signed the notes and the other loan documents only because Flatt had assured him that the DeKays were giving sufficient collateral to secure payment of the debt. Dixon's testimony in this regard was supported by the deposition testimony of the DeKays. As previously noted, however, SouthTrust and Flatt objected to this evidence on the ground that it was inadmissible under both the parol evidence rule and the general rule requiring exclusion of immaterial evidence, and asked the trial court not to consider it. The record does not reveal whether the trial court considered this evidence; however, if the evidence was inadmissible, then this Court, in determining whether summary judgment was proper, must assume that the trial court did not consider it. McMillian v. Wallis, 567 So.2d 1199 (Ala.1990).
A "material fact," in the context of a fraud action, is a fact that is capable of reasonably inducing someone to act. Fraser v. Reynolds, [Ms. 88-1466, -1522, September 14, 1990] (Ala.1990); Alfa Mutual Ins. Co., supra; see, also, Lawson v. Cagle, 504 So.2d 226 (Ala.1987); Bank of Red Bay v. King, 482 So.2d 274 (Ala.1985). In Hickox v. Stover, 551 So.2d 259, 263 (Ala.1989), a majority of this Court, quoting Chief Justice Hornsby's opinion concurring specially in Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1092 (Ala.1989), approved the following standard by which a person's action on a representation has to be assessed:
"In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"`[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."'"
Later, this Court explained that under both the Hickox standard, and the "reasonable reliance" standard most closely associated with Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983), a person who is under a legal duty to read and to fully understand the nature of a transaction,[3] and who signs a contract containing language that is clearly contrary to a pre-execution parol representation,[4] cannot, as a matter of law, act on that representation. See Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746 (Ala.1990). Therefore, in holding that an oral representation that is made before the execution of a written contract to the contrary is not legally capable *712 of inducing action on the part of someone who is under a legal duty to read and to fully understand the nature of the transaction, this Court has, in effect, taken the position that, where those circumstances exist, evidence tending to prove such a representation is not material to a claim of fraud in the inducement (i.e., that evidence of such a representation is legally insufficient to prove a false representation of material fact) and should be disregarded. For example, in Tyler v. Equitable Life Assurance Society of the United States, 512 So.2d 55 (Ala.1987), this Court held, as a matter of law, that it was not reasonable for the plaintiffs to rely on an alleged representation that had been made prior to the execution of, and that was contradicted by, a note and mortgage.
The position taken in Tyler is different from the position that this Court has taken in the past when considering what effect a subsequent written contract has on a pre-execution parol representation. For example, in Alabama Machinery & Supply Co. v. Caffey, 213 Ala. 260, 262, 104 So. 509, 511 (1925), this Court, holding that evidence of a parol warranty was admissible, stated:
"A stipulation in the written contract that there are no verbal understandings not incorporated therein does not estop the party to set up fraud in verbal misrepresentations inducing the contract."
It is hard to reconcile the positions taken by this Court in Caffey and in Tyler. In Caffey, this Court refused to hold the trial court in error for admitting evidence of a parol warranty, even though the plaintiff was a party to a written contract clearly stipulating that such a warranty had not been made. In Tyler, this Court held that the note and mortgage rendered the oral representation of the defendant's agent insufficient as a matter of law to prove the fraud alleged, even though it does not appear that any objection was made to the admission of evidence of that representation. The need to reach some common ground between these two positions is obvious. This Court cannot abandon the desirable goal of maintaining stability and certainty in the contractual relations of those who have made a definite agreement, as it appears to have done in Caffey, nor can it assume the role of a factfinder in deciding "as a matter of law" that a plaintiff has not acted "reasonably" under the circumstances, as it appears to have done in Tyler. I note that this Court's willingness to venture into the factfinding arena in fraud cases has continued to this day, although the Court has changed the standard for reviewing a person's action on a particular representation. See Hickox v. Stover, supra.
This Court is not a factfinding body, and it is ill suited to determine whether a person's action on a particular representation was "reasonable" or was "justifiable" under the circumstances. When a plaintiff, without an objection by the defendant, introduces evidence that the defendant made a false representation to him and that he acted on that false representation to his detriment, by what authority should this Court, or the trial court, disregard that evidence in determining whether the plaintiff acted reasonably or justifiably, even if the plaintiff did sign a contract that was clearly contrary to the representation? I think that there is a better way to approach cases of this kind. Evidence like that which Dixon offered in this case should be excluded pursuant to a proper objection, Smith v. Brownfield, 553 So.2d 573 (Ala. 1989) (evidence that is not material to the disposition of a claim is subject to objection and exclusion), but if no objection to the otherwise inadmissible evidence is made, it should be considered along with all of the other evidence in the case in determining whether the plaintiff could act on the representation.
Approaching the present case from this standpoint, I would hold that Dixon's and the DeKays' testimony regarding any representations concerning the sufficiency of the DeKays' collateral that may have been made to him by Flatt prior to the execution of the loan documents was not admissible in furtherance of his fraud claim. The promissory notes and personal guaranty agreement signed by Dixon, introduced by SouthTrust and Flatt in support of their motions for summary judgment, made a *713 prima facie showing that Dixon did not act on any representations that may have been made by Flatt concerning the amount of collateral that was to be provided by the DeKays. Dixon, who, the record shows, was under a legal duty to read and to fully understand the nature of the transaction, testified that Flatt made certain oral representations concerning the amount of the DeKay's collateral and that he acted on those representations. That testimony was not material to his fraud claim; consequently, it was subject to objection and exclusion under Rule 56. I would assume, therefore, that the trial court, pursuant to the objections of SouthTrust and Flatt, did not consider this evidence. Accordingly, I would overrule the holdings in Alabama Machinery & Supply Co. v. Caffey and Tyler v. Equitable Life Assurance Society of the United States, as well as the holdings in other similar cases, to the extent that they are inconsistent with the views that I have expressed herein, and I would hold that the summary judgment for South-Trust and Flatt was proper, on the ground that there was no genuine issue of material fact (Rule 56(c)) regarding the absence of one of the essential elements of Dixon's fraud claimsa false representation of material fact.[5]
NOTES
[1] Effective January 9, 1985, fraud actions were transferred to the two-year statute of limitations. Ala.Code 1975, § 6-2-38.
[2] Although SouthTrust and Flatt initially introduced Dixon's depositions in support of their motions for summary judgment, they later objected to the portions of those depositions that were relied on by Dixon. This objection was brought to the trial court's attention prior to its ruling on the motion.
[3] As a general rule, a person is under a legal duty to read and to understand what he signs. Traylor v. Bell, 518 So.2d 719 (Ala.1987); First National Bank of Mobile v. Horner, 494 So.2d 419 (Ala.1986). However, under certain circumstances, a person may be relieved of this duty so that he can act on an oral representation even though the representation is inconsistent with a contract subsequently signed by him. See, e.g., Arkel Land Co. v. Cagle, 445 So.2d 858 (Ala.1983) (held that the plaintiff, who had a fifth-grade education, could act on a false representation concerning the content of a mineral lease that was made by the defendant's attorney, who, the plaintiff thought, was acting on his (the plaintiff's) behalf); Century Plaza Co. v. Hibbett Sporting Goods, Inc., 382 So.2d 7 (Ala. 1980) (held that the plaintiff could act on a false representation that was made by the defendant's agent that the contents of a shopping center lease, which had previously been read and rejected by the plaintiff, had not been changed); Connell v. State Farm Mut. Auto. Ins. Co., 482 So.2d 1165 (Ala.1985) (held that the plaintiff could act on a false representation that was made by the defendant's agent that the plaintiff was applying for certain insurance coverage, when the language used in the application was technical in nature and its meaning was peculiarly within the knowledge of the agent). For a more recent case that is similar to Connell, see Liberty National Life Ins. Co. v. Sherrill, 551 So.2d 272 (Ala.1989). In Liberty National, although the opinion, which I wrote, is not clear on the matter, the language used in the insurance application was also technical in nature and its meaning was peculiarly within the knowledge of the agent.
[4] It is axiomatic that a person is not required to anticipate that he may be the victim of a fraud; therefore, if the contract is not clearly contrary to a pre-execution parol representation, he can act on that representation.
[5] Although I would not hold that Dixon's testimony was inadmissible under the parol evidence rule, I note that that rule, like the exclusionary rule I would apply in this case, prohibits the introduction of immaterial evidence. The parol evidence rule does not exclude certain evidence because, for one reason or another, it is untrustworthy or undesirable as a means of evidencing a fact sought to be proved. The rule simply states that certain evidence is legally ineffective. See Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431 (Ala.1979). The logic of the parol evidence rule is that when parties have made a contract and have clearly expressed it in a writing to which they have assented as the complete and accurate integration of that contract, any evidence, whether parol or otherwise, of antecedent understandings and negotiations is not material to any question involving rights and obligations under the contract.

I also note that in Alabama the application of both the parol evidence rule in contract cases and the exclusionary rule, which I would apply in this case, may be waived if a proper objection is not made, and that evidence admitted without objection should not be disregarded in resolving the issues presented. See Alfa Mutual Ins. Co. v. Northington, supra ("[i]n Alabama ... it has been generally recognized that parties to a lawsuit may try their case on evidence that would otherwise be inadmissible upon proper objection and that where evidence violative of the parol evidence rule is admitted without objection, it may be considered and allowed such force and effect as its weight entitles it in construing the agreement of the parties"). But see Annot., 81 A.L.R.2d, Modern Status of Rules Governing Legal Effect of Failure to Object to Admission of Extrinsic Evidence Violative of Parol Evidence Rule 249 (1977), for a collection of cases from other jurisdictions holding that evidence violative of the parol evidence rule may not be considered, even though it was admitted without objection.