On Application for Rehearing
The opinion of April 3, 1998, is withdrawn and the following is substituted therefor.
Roy Lee Richardson sued Liberty National Insurance Company and its agent, Doug Watkins, alleging claims of fraud and suppression in the sale of an insurance policy. The trial court entered a summary judgment for Liberty National and Watkins. Richardson appealed to the Alabama Supreme Court and that court transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Richardson argues that the trial court erred by entering the summary judgment because, he claims, he presented, in opposition to the defendants' motion, substantial evidence on all the elements of fraud and suppression. "A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. If the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to present evidence creating a genuine issue of material fact. Bass v.SouthTrust Bank, 538 So.2d 794 (Ala. 1989). To carry that burden, the nonmoving party must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A court reviewing a summary judgment is to construe the evidence in the manner most favorable to the nonmovant, and it is to resolve all doubts against the movant. Motes v. Matthews, 497 So.2d 1121,1123 (Ala. 1986).
Construed most favorably toward Richardson, the nonmovant, the evidence suggests the following: Watkins had dealt with the Richardson family, including Roy Lee and his father LeRoy Richardson, for several years and had sold various members of the family seven or eight insurance policies. To collect the premiums due on these policies, Watkins made monthly visits to the Richardson home. Watkins was aware that LeRoy Richardson was 64 years old, that he had had a stroke, and that he was in failing health. During a visit by Watkins to the Richardson home on August 1, 1994, Roy Lee Richardson told Watkins that he had a $4,000 burial policy on his father LeRoy, but that he was concerned that would not be enough for a proper burial and that he wanted another policy for his father. According to Roy Lee, Watkins said that he could provide a policy with a $2,500 death benefit and that LeRoy "would be covered right then."
Roy Lee purchased from Watkins a "Modified Benefit Limited Payment" policy insuring the life of his father LeRoy. Roy Lee was the beneficiary of the policy. Roy Lee says that Watkins did not tell him that the policy would not pay the full death benefit until it had been in effect for three years. He says that if Watkins had told him the full benefit was not available for three years, he would not have bought the policy.
On August 1, 1994, LeRoy filled out an application for a "Modified Benefit Limited Payment Life" insurance policy. In September, Watkins delivered the policy to LeRoy. The front page of the policy contained the following statements, in capital letters and bold type:
 "REDUCED DURING FIRST 3 POLICY YEARS. DURING THIS TIME THE DEATH BENEFIT IS EQUAL *Page 577 
TO THE PREMIUMS PAID INCREASED BY 10% PER YEAR."
On September 18, 1994, Douglas Harris, a Liberty National policy benefits coordinator, sent LeRoy Richardson a letter explaining the modified-benefit policy and outlining the manner in which the reduced death benefit would be calculated for the first three years of the policy.
LeRoy Richardson died on June 29, 1995, less than a year after the modified-benefit policy was issued. The next day, Roy Lee Richardson informed Liberty National of his father's death and said he wanted to make a claim under the policy. Liberty National personnel gave Roy Lee a claim form, told him to take it to the funeral home to obtain proof of death, and explained that, because LeRoy Richardson had died within the first three years of the policy, Roy Lee was entitled only to a return of premiums paid plus 10%. It is undisputed that Roy Lee did not file a claim under the policy.
 Fraudulent Misrepresentation
To establish his claim of fraudulent misrepresentation, Richardson is required to show (1) that Watkins misrepresented a material fact; (2) that Watkins did so willfully to deceive, recklessly without knowledge, or mistakenly; (3) that Richardson relied on the misrepresentation and that under the circumstances his reliance was justifiable;[1] and (4) that he was damaged as a proximate consequence of his reliance. Harrington v.Johnson-Rast Hays Co., 577 So.2d 437 (Ala. 1991). Richardson argues that Watkins misrepresented the material fact that he would not be entitled to the full face amount of the death benefit under the policy for three years. He claims that he was misled into believing that from the beginning the policy would pay the face amount upon his father's death, regardless of when it occurred, and that, if he had known the policy would pay the full benefit only after the policy had been in effect for three years, he would not have purchased it. Richardson admitted that he had not read the policy or the explanatory letter Liberty National sent his father. Liberty National contends that it was entitled to a judgment as a matter of law because Richardson had never read the policy.
Liberty National made the same argument in LibertyNational Life Ins. Co. v. Sherrill, 551 So.2d 272 (Ala. 1989), and the Alabama Supreme Court rejected it. Because the facts of this case are indistinguishable from those in Sherrill, we also reject Liberty National's argument in this case. In Sherrill, a Liberty National agent sold a $2,500 "Modified Benefit Limited Payment" life insurance policy to a 64-year-old woman whose husband was extremely ill. The husband filled out the application and paid the initial premium. The policy insured the life of the husband, and the wife was named the beneficiary.
The Liberty National agent personally delivered the policy to the woman and her husband. The wife put the policy away, without reading it. The husband died within the first year of the policy period, and the wife made a claim for the death benefit. When she received only a refund of premiums paid plus 10% interest, she sued Liberty National, alleging that the insurance agent had misrepresented to her that "she, as the designated beneficiary under the policy, would receive $2500 upon the death of Mr. Sherrill, regardless of the date of his death." 551 So.2d at 273. At trial, Liberty National, contending that the wife "was precluded as a matter of law, from recovering any damages for fraud," because she never read the policy, id., moved for a directed verdict and — after the jury had returned a verdict for the wife — moved for a judgment notwithstanding the verdict (JNOV). The trial court *Page 578 
denied those motions, and Liberty National appealed from the resulting judgment. Our supreme court affirmed, holding that "whether [the wife's] reliance was reasonable or justified was for the trier of fact."Id.
Like the evidence in Sherrill, the evidence in this case was sufficient to create a genuine issue of material fact as to whether the beneficiary's reliance on the agent's representation was justifiable. The fact that Sherrill was a "scintilla rule" case and this is a "substantial evidence" case makes no difference. Under either standard, Richardson's testimony created a genuine issue of material fact entitling him to a jury trial. "When `substantial' is considered in relation to `scintilla,' the term requires only that the evidence be material, of some substance." Ex parte Gradford, 699 So.2d 149, 152 (Ala. 1997). Clearly, Richardson's testimony was "of some substance."
 Fraudulent Suppression
The elements of a claim for fraudulent suppression are "(1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) because of a confidential relationship between the parties or the circumstances of the case and (4) which caused injury as a proximate consequence." Applinv. Consumers Life Ins, Co,, 623 So.2d 1094, 1098 (Ala. 1993),overruled on other grounds, Boswell v. Liberty Nat'l Life Ins.Co., 643 So.2d 580 (Ala. 1994). If one receives from a defendant documents that put him on notice of the very facts alleged to have been suppressed, then that defendant cannot have suppressed those facts. See, e.g., Robinson v. JMIC Life Ins. Co., 697 So.2d 461
(Ala. 1997); Henson v. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993); Hardy v. Blue Cross Blue Shield, 585 So.2d 29 (Ala. 1991); Tillery v. Security Pacific Financial Services, Inc.,703 So.2d 402 (Ala.Civ.App. 1997).
The summary judgment is affirmed as to the fraudulent suppression claim. It is reversed as to the fraudulent misrepresentation claim. The cause is remanded for proceedings consistent with the principles expressed in this opinion.
OPINION OF APRIL 3, 1998, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates and Crawley, JJ., concur.
Robertson, P.J., concurs in the result.
Monroe and Thompson, JJ., dissent.
[1] The complaint in this case was filed before the Alabama Supreme Court issued its opinion in Foremost Ins. Co. v. Parham,693 So.2d 409 (Ala. 1997), which overruled Hickox v. Stover,551 So.2d 259 (Ala. 1989). Foremost replaced the "justifiable reliance standard" in fraud cases with the "reasonable reliance standard."