Jimmy and Wanda Maness appeal the decision of the trial court in a declaratory judgment action filed by appellee, Farm Bureau Mutual Casualty Insurance Company (Farm Bureau). The declaratory judgment action was filed to determine whether certain insurance policies[1] obligated Farm Bureau to defend its insured in a personal injury suit (Case Number CV-79-056) brought by the Manesses.
In order to properly identify the parties and relationships involved in this appeal, a brief explanation of the circumstances surrounding the personal injury suit brought by the Manesses may be helpful.
Jimmy Maness, a volunteer fireman for the Sylacauga Fire Department, was injured on February 17, 1978, when the Weogufka Volunteer Fire Department truck somehow moved down an incline and pinned Maness between that truck and the Sylacauga Fire Department Truck. Both trucks were parked and unoccupied. The Manesses, alleging negligence, filed "an action against Claude Bain Culver, Fire Chief of the Weogufka Volunteer Fire Department; Weogufka Volunteer firemen Steve Dyess and Harold Moore; and the Weogufka Volunteer Fire Department. Each of the individual defendants, Culver, Dyess and Moore, allegedly had one or more insurance carriers; one carrier was Farm Bureau, who initiated this declaratory judgment action.
The Manesses, as defendants in Farm Bureau's declaratory judgment action, filed a motion, which was granted by the trial court, to add the other insurance carriers, as parties in this declaratory judgment action. Next, the Manesses filed a counterclaim against Farm Bureau, asking the court to determine whether Farm Bureau is obligated to defend its insured (Culver) in the Manesses' original suit and to indemnify Culver for any judgment rendered against *Page 981 
him. Cross-claims were then filed by the Manesses against Moore's insurance carriers asking the trial court to determine whether each or all of the carriers were obligated to defend Moore in the personal injury suit and indemnify him for any judgment rendered against him. The trial court dismissed the cross-claims filed by appellants against Moore's insurance carriers and held that the policy issued by Farm Bureau to Culver covering his mobile home did not provide coverage for the accident which had caused the injuries to Jimmy Maness. The insured, Culver, does not appeal.
This appeal by Jimmy and Wanda Maness deals with (1) the propriety of the dismissal of the cross-claims by the trial court and (2) the interpretation by the trial court of the Farm Bureau policy covering Culver's mobile home.
 The Cross-Claims
According to the Manesses, the purpose of filing the cross-claims was to allow all of the insurance carriers involved to resolve their coverage disputes in one action to avoid the situation of having the Farm Bureau declaratory judgment action decided and then having one of the other insurance carriers initiate another declaratory judgment action, concerning its particular policy, thus again enjoining the Manesses from proceeding with their personal injury action.
While the Manesses' argument is persuasive, the request by them is in conflict with Alabama law. The issue is not a simple cross-claim issue under Rule 13 (g), Alabama Rules of Civil Procedure;[2] instead, the issue is whether a plaintiff in a personal injury action who has been made a defendant in a declaratory judgment action brought by one insurer can in effect bring a declaratory judgment action against other insurers by using cross-claims.
The Manesses contend that Code 1975, § 27-23-1, gives them an interest in the outcome of any coverage disputes between alleged tortfeasors and their insurance carriers. While there have been no decisions particularly pertaining to §§ 27-23-1
and -2 as presently written, these two sections are substantially the same as Code 1940 tit. 28, §§ 11 and 12 (see, editor's notes to §§ 27-23-1 and -2), and thus the cases under these predecessor statutes are controlling.
Under Alabama law, the injured party acquires a vested interest (secondary) in the nature of a hypothecation of the insured's rights under the policy. Fleming v. Pan American Fire Cas. Co., 495 F.2d 535 (5th Cir. 1974). See also, Macey v.Crum, 249 Ala. 249, 30 So.2d 666 (1947); George v. Employers'Liability Assur. Corp., 219 Ala. 307, 122 So. 175 (1929).
 "We have held along with the generally accepted view that the right and remedy provided for in sections 8376 and 8377, Code [1923] (not influenced by other provisions of the law or contract), did not extend to plaintiff a primary claim as a contractee of such a policy of insurance with a power to sue to enforce it independent of the status created between the assured, against whom judgment had been rendered, and his insurance carrier. . . ."
Employers Ins. Co. of Alabama v. Johnston, 238 Ala. 26, 30,189 So. 58 (1939). See also, McDowell v. United States Fidelity Guaranty Co., 260 Ala. 412, 416, 71 So.2d 64 (1954).
Once an injured party has recovered a judgment against the insured, the injured party may compel the insurer to pay the judgment. The injured party, however, can bring an action against the insurer only after he has recovered a judgment *Page 982 
against the insured and only if the insured was covered against the loss or damage at the time the injured party's right of action arose against the insured tort-feasor. Fleming v. PanAmerican Fire Cas. Co., 495 F.2d at 540.
We hold that the cross-claims of the Manesses against the insurance carriers are a form of direct action against an insurance carrier and not allowable under Alabama law because an injured party cannot bring a direct action against the insurance carrier, absent a final judgment against its insured, see, Code 1975, §§ 27-23-1 and -2. Therefore, the dismissal of the cross-claims by the trial court was proper.
 The Farm Bureau Mobile Home Policy
The trial court in its order stated:
 "It is therefore, Ordered, Adjudged and Decreed, and the Court does hereby Declare, that the injuries sustained by Maness which are the basis of his claims set forth in case number CV-79-056 pending in this Court, and set out in the aforesaid stipulation, were incurred under and arose out of activities, conduct, facts, and circumstances which are not covered by . . . (b) the Alabama Farm Bureau Mobile Home Policy (Plaintiffs' exhibit 2) insuring Claude Bain Culver. In accord with the foregoing, it is further Ordered, Adjudged, and Decreed that Plaintiff herein has no duty to defend . . . Claude Bain Culver, or pay any benefit, compensation or indemnity, in connection with, with respect to or arising out of the aforesaid injuries sustained by Jimmy Maness."
During oral argument, counsel for the Manesses expressed the issue as follows:
 "Does language excluding the ownership, maintenance, operation, use, loading and unloading of a motor vehicle apply under these conditions:
 "(1) The insured has been sued for negligently performing or failing to perform his duties as volunteer fire chief;
 "(2) These duties included training volunteer fireman to operate and handle certain fire department equipment;
 "(3) Untrained or improperly trained firemen permitted a parked truck not on the insured's premise to move down a hill and injure one of the plaintiffs; and
 "(4) The insured was not present at the time of the injury."
This issue posed by the Manesses is whether the injury to him was excluded from coverage. However, the question is more basic. It is not whether the exclusions apply but whether the property insured under the policy was involved in the accident which caused the injuries to Maness.
The policy sets out the property covered as the following:
"A. Property Covered.
"1. Mobile Home.
 "Coverage for the mobile home described in the Declaration includes:
 "a. Such parts, equipment and accessories as are originally built into and form a permanent part of its structure and in addition, steps, and oil or gas drums or tanks connected to and furnishing heating or cooking fuel to the trailer.
 "b. Such appliances, furniture and equipment as were furnished by the manufacturer or dealer as standard equipment with the trailer, or described in the certificate of origin or sales invoice delivered to the Named Insured, were included in the value upon which premium is paid, and remain part of the trailer at the time of loss. Subsequent replacements of the foregoing shall also be included if they remain part of the trailer at the time of loss.
 "c. An outside radio or television antenna or tower located within 25 feet of the trailer and connected to a set located in the trailer or in an attached room or cabana, or on a patio immediately adjoining the trailer, but to the extent of $50 in value only.
"2. Adjacent Structures and Equipment. *Page 983 
 "This coverage includes awnings, shelters, cabanas, porches, water pumps and air conditioners attached to (or being transported in) and used in connection with the trailer and described in the Declarations in this policy to the extent of their actual cash value but not exceeding the amount shown for such items under "Limit of Liability" in the Declarations.
"3. Personal effects.
 Coverage for personal effects includes personal property owned, worn or used by an Insured and usual or incidental to the occupancy of the mobile home as a dwelling. It does not include adjacent structures and equipment, as described in A. 2. above: animals; birds; automobiles; miscellaneous motor vehicles; vehicles licensed for road use; aircraft; property of roomers or boarders not related to an Insured; money or currency, deeds, documents, records, bills, notes, securities, evidences of debt, articles carried or held as samples, or for sale, or for delivery after sale, or for rental to others; property pertaining to a business or occupation of an Insured; and property which is separately described and specifically insured in whole or in part by any other insurance.
"B. Perils Insured Against.
 "1. Mobile Home and Adjacent Structures and Equipment.
 "a. Comprehensive Protection. Under this coverage, the Company will pay for loss of or damage to the property described in subparagraph A. 1., Mobile Home, and A. 2. Adjacent Structures and Equipment, occurring during the policy period when such loss or damage is caused directly, suddenly and accidentally by any peril except collision. Damage resulting only from leakage of rain, sleet or snow shall not be deemed direct and accidental and is not intended to be covered under this paragraph.
 "b. Collision Protection (including Upset). Under this coverage, the Company will pay for loss of or damage to the property described in subparagraph A. 1., Mobile Home, when such loss or damage is caused directly, suddenly and accidentally by collision.
 "(1) Where full term protection is indicated in the Declarations, this protection continues throughout the term of the policy.
 "(2) Where trip collision only is shown in the Declaration, or by separate endorsement, this protection continues only for the number of days indicated beginning at 12:01 A.M. on the commencement date shown or at the date and hour shown on the endorsement.
"2. Personal Effects.
 "a. Under this coverage, the Company will pay for loss of or damage to the property described in subparagraph A. 3., Personal Effects, occurring during the policy period while such property is within the mobile home, when such loss or damage is caused directly, suddenly and accidentally by
 "(1) Fire or lightning, except that damage which is confined to scorching is not covered.
 "(2) Explosion; smoke or smudge (but not the gradual accumulation of any oily or greasy substance or film) resulting from any sudden, unusual, and unexpected event.
 "(3) Windstorm (meaning a high wind of extraordinary and unusual violence, or tornado, hurricane, cyclone or typhoon), hail, earthquake, landslide, flood or other water rising from outside the mobile home; rain, snow or sleet, driven through roof or wall openings made by direct action of wind or hail. Except as specifically included heretofore in this paragraph (3), damage from rain, sleet, or snow, whether or not wind driven, is not
covered.
 "(4) Riot or civil commotion; malicious mischief and vandalism perpetrated by a person or persons other than a member of Named Insured's household. *Page 984 
 "(5) Missiles propelled or objects falling from outside the mobile home or insured structure; forced landing of aircraft.
 "(6) Collision of the mobile home with another object outside the mobile home.
 "b. In addition, protection is extended, to the extent of 10% of the dollar limit of liability stated for this coverage in the Declaration but not exceeding $500, to personal effects which are not within the mobile home, where such loss is caused directly and accidentally by fire or lightning as defined and limited above, earthquake, landslide, flood or other water rising from outside the mobile home, or the forced landing of aircraft."
"Insurance contracts must be interpreted in keeping and consonant with the evident intention of the contracting parties as gathered from the instrument in its entirety," Lingo v. GulfLine Ins. Co., 32 Ala. App. 525, 528, 27 So.2d 697 (1946). The mobile home policy purchased by Culver was designed to insure Culver's mobile home, the premises immediately around his mobile home, and its occupants when involved in activities related to the premises and areas adjacent to the premise. Premises being defined in the policy as "the mobile home described . . . with the land upon which it rests while on blocks or leveling jacks with utilities connected and while not in transit, . . . together with any private approaches under the exclusive control of the Named Insured. . . ." In Cooter v.State Farm Fire Cas. Co., 344 So.2d 496 (Ala. 1977), we ruled that the language of a homeowner policy excluded personal liability coverage for bodily injury arising out of the ownership and use of an automobile owned and operated by the insured. See, 344 So.2d at 499. Evidence of non-coverage under Culver's policy in this case is more emphatic than the evidence presented in Cooter.
The property covered by Culver's policy was not involved in the fire being attended to by Maness at the time of his injury. The fire was at a James Jack's house in Coosa County. Culver was not even at the fire. Neither the fire nor the injuries to Maness occurred around the mobile home. Obviously, the policy covering the mobile home belonging to Culver did not insure Culver against liability under the facts in this case. The policy specifically excluded coverage of automobiles or miscellaneous motor vehicles presumptively operated by Culver while he was away from his mobile home. In this case neither Culver nor the mobile home insured by Farm Bureau was present when Maness received his injuries. While the possibility of Culver's negligence as volunteer fire chief still awaits consideration in the personal injury suit, the policy covering his mobile home is not involved. The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES and BEATTY, JJ., concur.
[1] Originally, there were also two automobile policies presented in the declaratory judgment action. Appellants in their reply brief admit that they do not challenge the trial court's determination that Culver and Dyess were not due coverage under the automobile policies.
[2] Rule 13 (g), Alabama Rules of Civil Procedure, states:
 "A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."