First Mercury Syndicate, Inc. ("FMS"), appeals from a judgment declaring that FMS owed a duty to defend and/or indemnify its insureds — Franklin County, the Franklin County Commission, and Larry Plott, the sheriff of Franklin County — against the wrongful death claim asserted by Willa Thomson, the administratrix of the estate of the deceased, Harold McCarley. The issue is whether the language in the insurance policy excluded Thomson's claim from coverage.
On October 8, 1986, Franklin County purchased professional liability insurance for its law enforcement officers from The Star Pool, a self-insurance membership pool. The County renewed its membership with The Star Pool in 1987, 1988, and 1989.
On or about March 28, 1989, Harold McCarley attempted suicide while incarcerated in the Franklin County jail; McCarley died on March 31 from the injuries he inflicted on himself. On September 25, 1989, Willa Thomson, the administratrix of McCarley's estate, filed a claim with the Franklin County Commission against the County pursuant to Ala. Code 1975, §11-12-1 et seq.; this claim demanded $100,000 for various acts of misfeasance and nonfeasance on the part of the County. The County notified The Star Pool of this claim, and The Star Pool conducted some investigation with respect to the claim.
The County remained a member of The Star Pool until October 1990, when Probate Judge Larry Jackson, chairman of the County Commission, was contacted by Jim Cantwell. Cantwell informed Judge Jackson that The Star Pool was experiencing financial trouble, and Cantwell suggested that the County obtain a new insurance carrier. *Page 1076 
Judge Jackson testified that he was concerned about obtaining retroactive coverage for the McCarley incident and that Cantwell assured him that, as an agent of FMS,[1] he (Cantwell) could write a policy with retroactive coverage. The County then terminated its membership in The Star Pool and purchased similar insurance from FMS; in the application the County notified FMS of McCarley's attempted suicide.
On March 5, 1991, The Star Pool informed the County that it would not cover the claim, because of the County's failure to renew its membership. The County then contacted FMS about the claim. FMS, on March 20, denied the claim, stating:
 "[A] review of the materials submitted above indicates that a claim had been made with respect to this matter prior to the October 9, 1990, inception date of your policy. We wish to advise you that we are denying coverage to you due to the above cited provision."
A week later, Thomson filed a wrongful death action against the County. On April 26, the County filed a declaratory judgment action, seeking to have the court hold that either The Star Pool or FMS, or both, had a duty to defend it against Thomson's claim. Before the hearing on the action, The Star Pool agreed to defend and/or indemnify the County. Following the hearing, the trial court held that FMS did have a duty to defend and/or indemnify the County; FMS appeals.
This Court first notes that although the trial court heard the testimony of two witnesses, the ore tenus rule does not apply here, because the question of whether an insurance policy is ambiguous is a question of law for the trial court.[2] Upton v.Mississippi Valley Title Ins. Co., 469 So.2d 548 (Ala. 1985). Therefore, no presumption of correctness attaches to the trial court's ruling, and this Court must review that ruling de novo.
FMS argues that it is not required to defend and/or indemnify the County because, it argues, the language in the policy unambiguously provides that claims filed against the County before October 9, 1990, are not covered under the policy. FMS relies on two provisions in the policy and related documents to support this argument. The first provision, which appears in bold type on the declarations page and on the first page of the policy, reads:
 "Except to such extent as may be otherwise provided herein, the coverage of this policy is limited to liability for only those claims that are first made against the insured and reported to the company while the policy is in force. This insurance does not apply to 'personal injury' or 'property damage' that takes place before the retroactive date, if any, shown in the declarations or takes place after the 'policy period.' "
The other language relied upon by FMS reads:
 "This insurance does not apply to any 'claim' made against you prior to the inception of the 'policy period.' "
The declarations provide that the "retroactive date" is October 9, 1986. The declarations also provide that the "policy period" is from October 9, 1990, to October 9, 1991.
FMS argues that because the initial claim was brought by Thomson against the County in September 1989, before the "policy period," the claim is excluded under the policy. FMS concludes that because courts are not free to rewrite insurance contracts that are unambiguous, but must enforce them as written, Langley v. Mutual Fire, Marine Inland Ins. Co.,512 So.2d 752 (Ala. 1987), overruled on other grounds, Hickox v.Stover, 551 So.2d 259 (Ala. 1989), the trial court erred in holding for the County.
This Court does not find this policy unambiguous. The first passage quoted above states that FMS will be liable only for "those *Page 1077 
claims that are first made against the insured and reported to the company while the policy is in force." (Emphasis added.) FMS's argument apparently seeks to equate the term "while the policy is in force" in the first sentence with the term "policy period" in the second sentence. However, the phrase "while the policy is in force" is not defined anywhere in the policy or other documents, while the term "policy period" is defined as "the period of one (1) year following the effective date and hour of this policy or any anniversary thereof." (Emphasis added.) This definition is problematic, because the term "effective date" is not defined in the policy. Therefore, it is uncertain whether the "effective date" of the policy is October 9, 1990, or October 9, 1986 — the "retroactive date" specified in the declarations. In other words, the "effective date" of the policy may be reasonably interpreted to be either: 1) the date on which the policy was actually issued — October 9, 1990; or 2) the date on which the coverage theoretically began — October 9, 1986. This ambiguity is heightened by the fact that the critical term "retroactive date" is not defined or explained anywhere in the policy; it is merely set forth in the declarations. Thus, there is no explanation in the policy of how the term "retroactive date" relates to the term "effective date." The uncertain nature of this all-important relationship logically causes confusion over whether the policy came to be "in force" on October 9, 1990, or on October 9, 1986.
FMS contends that the judgment provides coverage for which no premium was paid and that the County's argument is overly technical. The first contention is not valid, however, because Judge Jackson testified at the hearing that the County paid an additional $4,000 premium for the retroactive coverage, and this testimony is uncontradicted. The County therefore did not receive the retroactive coverage at no cost.
FMS's contention that the County's argument is overly technical is not valid, because it is the drafter's inconsistent use of vague and undefined terms that caused the ambiguity here. It is well settled that any ambiguity in the policy is to be construed against the drafter and in favor of the insured. Amerisure Ins. Companies v. Allstate Ins. Co.,582 So.2d 1100 (Ala. 1991); Altiere v. Blue Cross Blue Shield ofAlabama, 551 So.2d 290 (Ala. 1989). Because we conclude that the policy was ambiguous as to when the policy came to be "in force," we hold that the trial court correctly determined that FMS had a duty to defend and/or indemnify the County.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Cantwell actually told Judge Jackson that he was representing Illinois Insurance Exchange ("IIE"), and the County bought the insurance from IIE. FMS was substituted as a defendant for IIE in Franklin County's declaratory judgment action.
[2] The trial court's order also held that FMS was bound by the representation of its agent, Cantwell, that the McCarley claim would be covered. Because we resolve the case on the wholly separate ground of the interpretation of the policy itself, we decline to address the agency issue.