658 So.2d 369 (1995)
David WOODALL
v.
ALFA MUTUAL INSURANCE COMPANY.
1930234.
Supreme Court of Alabama.
January 13, 1995.
Rehearing Denied March 24, 1995.
*370 M. Clay Alspaugh and Pamela D. Beard of Hogan, Smith, Alspaugh, Samples & Pratt, P.C., Birmingham, Gary W. Lackey, Scottsboro, for appellant.
John M. Fraley of McDaniel, Hall, Conerly & Lusk, P.C., Birmingham, for appellee.
ALMON, Justice.
David Woodall appeals from a summary judgment entered for Alfa Mutual Insurance Company on both Alfa's claims in its declaratory judgment action and on Woodall's counterclaim. Alfa, which had issued Woodall a commercial general liability insurance policy for his business and a homeowner's insurance policy for his residence, brought this declaratory action for a determination of whether it was obligated to defend or indemnify Woodall in a wrongful death action brought against him based on an allegation that his business had furnished alcohol to a minor. Woodall counterclaimed, alleging fraud, breach of contract, and bad faith refusal to defend. The issues are: (1) whether Woodall's commercial general liability policy provided coverage for his possible liability; (2) whether his homeowner's policy provided coverage for his possible liability; (3) whether the circuit court correctly entered the summary judgment for Alfa on Woodall's claim alleging a bad faith refusal to pay; and (4) whether the circuit court correctly entered the summary judgment for Alfa on Woodall's fraud claim alleging misrepresentations by Alfa agents concerning the coverage that would be provided under Woodall's commercial general liability policy.
Woodall owns and manages a convenience store in Scottsboro, doing business as Woodall's Quick-Stop. Woodall's minor son, Tom Woodall, occasionally works at the store. On December 17, 1989, Tom, Matthew Spain, and Sandy Keller, all minors, were involved in an automobile accident. Keller died as a result of injuries she sustained in the accident. After the accident, Spain, the driver, was tested and was found to have a blood alcohol level of .05%. Spain testified in his deposition that they had been drinking beer before the accident, that it came from Woodall's Quick-Stop, and that it had been provided, either by a sale or as a gift, by Tom. Keller's parents brought a wrongful death action against Woodall, d/b/a Woodall's Quick-Stop, alleging that he or his employees at the Quick-Stop had illegally provided alcohol to a minor, Spain, and had thereby proximately caused Keller's death.
*371 The Kellers' amended complaint was limited to a claim alleging a wrongful death arising from an alleged sale or gift of alcohol from Woodall or his agent to Spain. The parties here treat the Kellers' case as an action under the Dram Shop Act, Ala.Code 1975, § 6-5-71; see also the Civil Damages Act, § 6-5-70. Alfa argued that the commercial general liability policy it had issued to Woodall insuring the Quick-Stop excluded coverage for claims based on the Dram Shop Act.
The commercial general liability policy issued to Woodall included the following:
"2. Exclusions.
"This insurance does not apply to:
". . . .
"c. `Bodily injury' or `property damage' for which any insured may be held liable by reason of:
"(1) Causing or contributing to the intoxication of any person;
"(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
"(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
"This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."
Alfa argues that subparagraphs (1), (2), and (3) of paragraph (2)(c) of the policy exclude coverage for Sandy Keller's death, because, it argues, if Woodall is liable for her "bodily injury," it is by reason of his causing or contributing to Spain's intoxication, by reason of furnishing Spain, a minor, with alcoholic beverages, or by reason of the statute prohibiting the sale or gift of alcoholic beverages to a minor, Ala.Code 1975, § 28-3A-25(a)(3).
To overcome this argument, Woodall argues first that the exclusion provided in the subparagraphs of paragraph (2)(c) does not apply to him, because by its terms, he argues, it unambiguously provides that it does not include his type of business. He argues that the clause "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages" does not apply to him, because, he says, he is "in the business of running a grocery or convenience store, not in the business of selling alcoholic beverages. This argument unduly strains the plain meaning of the exclusion.
"[I]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous."
Gregory v. Western World Ins. Co., 481 So.2d 878, 881 (Ala.1985) (citation omitted). The clause cannot reasonably be read to apply only to an insured that is exclusively in the business of selling, etc., alcoholic beverages, because virtually all businesses that sell alcoholic beverages sell other products as well. The plain meaning of this exclusion and its limiting language is that the commercial general liability policy does not provide coverage for injury or damage resulting from the furnishing of alcohol unless the sale, etc., of alcohol is not in the usual course of the insured's business. The sale of beer and wine is in the usual course of the business of Woodall's Quick-Stop, so Woodall was, in the plain meaning of the phrase, "in the business of ... selling ... alcoholic beverages," and the exclusion applies.
Woodall alternatively argues that even if the Quick-Stop is not unambiguously outside the exclusion, the exclusion is ambiguous and so should be construed in favor of the insured. Whether a clause in an insurance policy is ambiguous is a question of law for the trial court, and this Court reviews the ruling on that question de novo. First Mercury Syndicate, Inc. v. Franklin County, 623 So.2d 1075, 1076 (Ala.1993). Courts are not empowered to insert ambiguities "`by strained and twisted reasoning, into contracts where no ambiguities exist.'" Commercial Union Insurance Co. v. Rose's Stores, Inc., 411 So.2d 122, 124 (Ala.1982) (quoting Michigan Mutual Liability Co. v. *372 Carroll, 271 Ala. 404, 123 So.2d 920, 924 (1960)). See St. Paul Mercury Insurance Co. v. Chilton-Shelby Mental Health Center, 595 So.2d 1375, 1377 (Ala.1992). The language in an exclusion should be given the same meaning "that a person of ordinary intelligence would reasonably give it." Western World Insurance Co. v. City of Tuscumbia, 612 So.2d 1159, 1160 (Ala.1992). The terms in an insurance policy are to be given a "rational and practical construction." Anderson v. Brooks, 446 So.2d 36, 38 (Ala. 1984).
For the reasons stated above, we hold that there is no ambiguity in the phrase "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages," as that phrase relates to these facts. Instead, that phrase does unambiguously include Woodall's Quick-Stop within its terms, so the exclusion does apply to the Kellers' claim against Woodall.
Woodall next argues that Alfa is estopped to deny coverage to him because of certain statements he alleges Alfa's agents made to him. Woodall stated in his affidavit that when Parks Tubbs, an agent for Alfa, sold him the commercial general liability policy, Woodall asked Tubbs about the effect his selling beer in the Quick-Stop would have on his coverage. Tubbs told Woodall, Woodall asserts, that it would not be a problem, because Woodall was "a grocery store owner who stocks beer." Thus, argues Woodall, Alfa is estopped to deny coverage for claims arising from Woodall's sale of beer.
The doctrine of estoppel "is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom." Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45, 50-51 (Ala.1980) (emphasis added); Johnson v. Allstate Ins. Co., 505 So.2d 362, 365 (Ala.1987); McGee v. Guardian Life Insurance Co., 472 So.2d 993, 995-96 (Ala. 1985). If a coverage provision or an exclusion is unambiguous, it is not subject to waiver or estoppel. Henson v. Celtic Life Insurance Co., 621 So.2d 1268, 1276 (Ala. 1993). Woodall concedes that if this Court does not hold that the policy is ambiguous, then the estoppel argument is not available to him. Because the policy is not ambiguous, no estoppel argument is available to extend the policy to risks not covered thereby, and we will not interpret the policy to provide coverage that was not intended.
For the foregoing reasons, the circuit court properly entered the summary judgment to the extent that it held there was no coverage under the commercial general liability policy and properly entered it against the counterclaim alleging a breach of contract.
Woodall argues that the homeowner's insurance policy he purchased from Alfa provides coverage for this accident, even if the commercial general liability policy does not. Woodall's home is not located on the same premises as his store.
The homeowner's policy provides both property coverage and liability coverage. The liability coverage is specified in the following provisions:

"SECTION IILIABILITY COVERAGES
"COVERAGE EPERSONAL LIABILITY
"If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, we will:
"1. pay up to our limit of liability for the damages for which the insured is legally liable; and
"2. provide a defense at our expense by counsel of our choice....
"COVERAGE FMEDICAL PAYMENTS TO OTHERS
"We will pay the necessary medical expenses incurred or medically ascertained within one year from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

"1. to a person on the insured location with the permission of an insured;

*373 "2. to a person off the insured location, if the bodily injury:

"a. arises out of a condition in the insured location or the ways immediately adjoining;
"b. is caused by the activities of an insured;

". . . .
"SECTION IIEXCLUSIONS
"1. Coverage E and Coverage F do not apply to:
". . . .
"b. bodily injury or property damage arising out of business pursuits of an insured.... The exclusion does not apply:

"(1) to activities which are ordinarily incident to non-business pursuits;
"(2) with respect to Coverage E to the occasional or part-time business pursuits of an insured who is under 19 years of age. ..."
(Emphasis added.)
The policy defines an "insured" as follows:
"`Insured' means you and if residents of your household:
"a. your relatives;
"b. any other person under the age of 21 who is in the care of a person described above."
Woodall argues, in essence, that his son Tom was an insured under the definition of "insured"; that the personal liability coverage of Coverage E applies to this claim because it refers to "bodily injury ... to which this coverage applies," and "this coverage" must include Coverage F; that Coverage F applies because, if Sandy Keller had not died, her medical expenses would have been covered under paragraph 2(b);[1] and that exclusion (1)b. does not apply because the exception of (1)b.(2) applies to Tom's part-time work at Woodall's Quick-Stop.
The circuit court, in rejecting this argument, cited Maness v. Alabama Farm Bureau Mutual Casualty Insurance Co., Inc., 416 So.2d 979 (Ala.1982). In Maness the Court held that a homeowner's policy did not cover potential liability for an injury occurring off the premises of the insured's home. However, the Court quoted and applied only the property damage provisions of the policy, not any liability coverage provisions. Because the liability coverage provisions quoted above present a different question from the question addressed in Maness, Maness provides no guidance for our decision in this appeal.
Coverage E's description of liability coverage is ambiguous: it appears to encompass, by its wording, any liability incurred by "an insured" unless excluded. It states that Alfa will pay up to its limits of liability and will defend an insured in an action "brought against an insured for damages because of bodily injury or property damage to which this coverage applies" (emphasis added). Coverage E does not further define "bodily injury ... to which this coverage applies," so we must look to other provisions of the policy. Coverages E and F are the only "Liability Coverages" under Section II, so Coverage F is the natural place to look to determine which bodily injuries the liability coverage applies to. Provision F.2.b. broadly applies to bodily injuries to "person[s] off the insured location" if the injury "is caused by the activities of an insured." Thus, Coverage F, and therefore Coverage E, would appear to apply to the Kellers' claim unless an exclusion bars coverage.
Alfa argues that paragraph 1.b. of the Exclusions excludes coverage because, it says, Keller's "bodily injury" arose out of Woodall's business pursuits. Woodall cites the second limitation on exclusion 1.b., which provides that the exclusion does not apply "with respect to Coverage E to the occasional or part-time business pursuits of an insured who is under 19 years of age." Woodall argues that, because his minor son Tom, who worked only part-time at the Quick-Stop, is *374 alleged to have furnished the alcohol to Spain, the exclusion does not apply. It is undisputed that Tom was a minor living at home with Woodall at the time of the accident. It thus appears under the policy that Tom was "an insured." Woodall argues that Tom, an insured, was at most involved in only a part-time business pursuit when he took the actions that allegedly caused the accident, and that the exclusion therefore does not apply to limit liability for those actions. Woodall argues that, because the policy does not exclude such coverage, and because its provisions must be interpreted in favor of Woodall, the homeowner's policy extends coverage to any liability Woodall faces for this accident.
Alfa does not dispute that Tom was also an insured, along with Woodall. However, Alfa's argument is based on the fact that the underlying tort action seeks damages against Woodall, not Tom. Thus, Alfa argues that Woodall is the only insured whose liability is at issue and that it was his business pursuits from which the liability arose. The exception for part-time business activities of minors is not available to Woodall, and thus he does not qualify for the exception to the exclusion.
Even if Tom were named as a defendant in the Kellers' action, his alleged wrongful acts were made possible only because he was hired to act as an agent or employee of his father, the owner of the business and the homeowner insured under the policy. The homeowner's policy clearly intends to exclude business pursuits of the insured homeowner. If the homeowner could hire his or her children to run the family business during certain hours on a part-time basis and thereby obtain coverage, the exception for legitimate part-time business pursuits of minors would circumvent the exclusion for business pursuits of the homeowner. The trial court correctly held that the homeowner's policy did not provide coverage for Woodall's possible liability to the Kellers, and the summary judgment is due to be affirmed as it relates to this aspect of the complaint and as it relates to Woodall's claim alleging breach of contract.
We now turn to Woodall's other claims. Woodall appeals from the summary judgment entered on his claims alleging fraud and bad faith refusal to pay. Woodall's arguments on the bad faith count are not well taken and will not be discussed further.
Woodall argues that his fraud claim is based on misrepresentations he says Alfa agents made on at least two occasions. Woodall alleges that Alfa agent Parks Tubbs, while selling him the policy, misrepresented to him that the commercial general liability policy would cover liability under the Dram Shop Act. Woodall's other allegation of fraud is based on alleged misrepresentations made by Tubbs and Mark Tate, an adjuster for Alfa, after the wrongful death action was filed. Woodall says Tubbs and Tate assured him that he was covered for any liability on the Kellers' wrongful death action.
Tubbs, in his deposition, acknowledged that when he was selling Woodall the commercial general liability policy he and Woodall discussed the fact that Woodall sold beer and wine. Tubbs stated that at that time he told Woodall that Alfa did not write insurance coverage for businesses that primarily sold alcohol, but that for a business, such as Woodall's Quick-Stop, that primarily sold groceries but also sold beer and wine, insurance was available, subject to approval from Alfa's underwriting department.
Woodall asserted in his affidavit in opposition to Alfa's motion for summary judgment that Tubbs had represented that the exclusion did not apply to him:
"The commercial general liability policy excludes coverage for certain alcohol related claims but `[t]his exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or funishing alcoholic beverages.' I am not in such a business. I run a grocery store which also sells wine and beer along with hundreds of other products. My agent, Parks Tubbs, knew I sold beer when he wrote me the policy, said that would be no problem and that I am a grocery store owner who stocks beer, therefore he could cover me."
A jury could find that Tubbs's statement could reasonably be construed as representing that the exclusion did not apply to Woodall *375 and that the policy would cover liability arising from Woodall's sale of beer and wine.
The elements of a fraud action, as required under Ala.Code 1975, § 6-5-101, are: "(1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) acted upon by the opposite party; and (4) reliance by the complaining party which was justifiable under the circumstances." McAlister v. Deatherage, 523 So.2d 387, 391 (Ala.1988).
The case of Alfa Mutual Insurance Co. v. Northington, 561 So.2d 1041 (Ala.1990), supports Woodall's claim. In Northington, an insurance agent of Alfa represented to a prospective buyer of a homeowner's policy that the policy would cover losses due to theft. However, the policy did not cover such losses. After the prospective buyer purchased and received the policy, he read its provisions and telephoned the agent, asking if the policy did indeed cover losses due to theft. The agent once again assured the insured that the policy did cover such losses. The home insured by the policy was burglarized during the coverage period of the policy. When the insured made a claim for his losses, Alfa refused to reimburse the insured for the stolen personal property. The insured filed an action against Alfa, alleging fraud. The jury found for the insured on the fraud count, awarding compensatory and punitive damages. This Court upheld the judgment based on the jury's verdict.
The Court stated in Northington that the insurance agent had a duty to tell the prospective insured the truth about the coverage the policy would provide. Likewise, in this case, Tubbs had a duty to tell Woodall the truth about the coverage his commercial general liability policy would provide. Woodall's affidavit and Tubbs's deposition testimony create a material issue of fact as to whether Tubbs misrepresented the coverage. Moreover, the evidence that Tubbs renewed these representations in regard to the Kellers' claim and that Tate confirmed them is further evidence that Alfa had sold Woodall a policy under the false representation that it would cover him for his beer and wine sales and that Tubbs and Tate continued to make misrepresentations consistent with Tubbs's initial misrepresentation.
Woodall presented evidence that he acted in justifiable reliance on Tubbs's misrepresentations, in that he purchased that policy of insurance and failed to secure another policy that would have provided him with coverage for dram shop liability. Woodall could have justifiably relied on these representations in spite of the language of the exclusion. Although we have held that the language limiting the exclusion to one "in the business of selling alcohol unambiguously makes the exclusion applicable to Woodall's Quick-Stop, a jury could find that the alleged representations by Tubbs were sufficiently plausible to explain away that language, and that, therefore, Woodall could have justifiably relied on Tubbs's alleged representation that the exclusion did not apply to Woodall's Quick-Stop because he could have understood his Quick-Stop to be simply a grocery store that sold beer.
Woodall also presented evidence that he was damaged by Tubbs's alleged misrepresentations in that he is now involved in a liability action for which he does not have insurance coverage. Arguably, had he known the truth about the policy's coverage, he either would not have purchased this particular policy or would have purchased extra coverage for dram shop liability.
Alfa argues that if this Court does determine that a fact question is presented on this fraud claim, we should still uphold the summary judgment for Alfa because, Alfa argues, this claim was barred by the applicable two-year statute of limitations, Ala.Code 1975, § 6-2-38(l). However, a fraud claim does not accrue until the injured party discovers or should have discovered the facts constituting the alleged fraud. Ala. Code 1975, § 6-2-3. Alfa argues that Woodall discovered the facts constituting the alleged fraud when he received the copy of the policy containing the exclusion, in April 1989. However, a jury could find that Woodall was not put on notice by reading the policy, because it could find that he could have construed the exclusion as he says Tubbs explained it to him, i.e., it could find that he believed the policy excluded only those businesses *376 that primarily or exclusively sold alcoholic beverages. Thus, a jury could find that Woodall was not put on notice of a fraud until he was notified of Alfa's action for a declaratory judgment in which Alfa contended that it did not have a duty to defend or indemnify Woodall in the wrongful death action. This action was filed well within the two-year period.
For the foregoing reasons, the court erred in entering the summary judgment on the fraud claim, and the judgment is due to be reversed as to that claim.
We affirm the summary judgment insofar as it relates to the declaratory judgment action. We also affirm the summary judgment insofar as it relates to the contract and bad faith counts in Woodall's counterclaim. We reverse the summary judgment insofar as it relates to the fraud count in Woodall's counterclaim.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in part and dissents in part.
HOUSTON, Justice (concurring in part and dissenting in part).
From reviewing the pleadings in Woodall's counterclaim, including the amendment to the counterclaim, and the trial judge's summary judgment order, I conclude that the issue of misrepresentation occurring before the sale of the commercial policy was not before the trial court. In an attempt to show that he had such a misrepresentation claim before the trial court, Woodall, in his reply brief, directs this Court to his amendment to the counterclaim (C.R. 88-90). Having read and studied that amendment, I conclude that the claim based on misrepresentation before the sale of the commercial policy is not covered by the amendment and that it was not presented to or ruled on by the trial court. This Court cannot hold a trial court in error for failure to rule on a matter not presented to or decided by it. West Town, Plaza Associates, Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993); Carter v. Treadway Trucking, Inc., 611 So.2d 1034 (Ala.1992).
Otherwise, I concur.
NOTES
[1] We note that "medical expenses" includes funeral expenses, so 2(b) may apply if Sandy Keller did not incur any other medical expenses.