YATES, Judge.
Robert Nichols, Flemón Jones, and Adrian Pound appeal from a summary judgment entered in favor of Life Insurance Company of Georgia (“Life of Georgia”), Garry Winsett, and Richard Bohlken. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
Viewed in a light most favorable to Nichols, Jones, and Pound, see Hinkle v. Burgreen Contracting Co., 678 So.2d 797 (Ala. Civ.App.1996), the evidence in the record suggests the following:
Life of Georgia is a life insurance company with its principal place of business in Atlanta, Georgia. During the years 1990, 1991, and 1992, it maintained an office in Mobile, Alabama, and there employed, among others, Winsett and Bohlken as agents who were authorized to sell life insurance.
In or around late 1990, Winsett and Bohlken contacted Dean Brothers Inc., an automobile parts/salvage business, regarding the establishment of a § 125 “cafeteria plan” for the company and its employees. Nichols, Jones, and Pound were employees of Dean Brothers. Cafeteria plans are a creation of Congress and are provided for in 26 U.S.C. § 125, a part of the Internal Revenue Code. Winsett and Bohlken informed Dean Brothers that the cafeteria plan would allow Dean Brothers employees to pay for certain qualified expenses with pre-tax dollars; their doing so would, in turn, save the company and the employees money and would provide the employees with retirement benefits. Winsett and Bohlken informed Dean Brothers that the cafeteria plan was legal, that Life of Georgia would take care of all the paperwork, and that the plan could be instituted at no cost to the company.
After Dean Brothers agreed to establish a cafeteria plan, Winsett and Bohlken advised the Dean Brothers employees concerning which expenses qualified under the cafeteria plan, assisted the employees in computing those expenses, and adjusted the Dean Brothers payroll system for the cafeteria plan deductions. Winsett and Bohlken conducted individual meetings with each employee, including Jones, Nichols, and Pound, wherein they showed each how much money they would save if they participated in the cafeteria plan. Winsett and Bohlken testified by deposition that during the meetings with the employees they discussed the fact that they were selling life insurance. The employees testified by deposition that Win-sett and Bohlken told them that if they participated in the cafeteria plan they would secure a retirement account and would receive an insurance policy as a bonus and that, *1129 based on these representations, the employees agreed to participate in the plan.
In December 1992, the Internal Revenue Service notified Dean Brothers that it owed a $6,875 penalty for the late filing of a required form for the cafeteria plan. Dean Brothers sued Life of Georgia in February 1994, alleging that Life of Georgia was responsible for the failure to file the form; the case was settled in October 1995.
Pursuant to 26 U.S.C. § 125, a cafeteria plan must have a written plan document and an established “flexible spending account.” Under a “flexible spending account” system, each employee estimates his expenses for the upcoming year, and then each pay period the employee subtracts a pro rata portion of this amount from his gross income and deposits this amount into a flexible spending account. 26 U.S.C. § 125. For example, when the employee visits a doctor and incurs a medical expense, he then submits a receipt to the plan administrator and is reimbursed from the flexible spending account tax-free. If this procedure is not followed, the cafeteria plan is deemed invalid and the entirety of the employee’s income is taxed. It is undisputed that the Dean Brothers cafeteria plan did not meet the requirements of 26 U.S.C. § 125.
Instead of establishing a “flexible spending account,” Winsett established what is typically called an “advanced reimbursement system.” Under this system, Winsett altered Dean Brothers’ payroll system to subtract the § 125 expenses from the employee’s paycheck before taxes were taken out. Taxes were then computed on the reduced income amount, and any untaxed § 125 portion was added back to the employee’s paycheck without regard to whether the employee had incurred the expenses or had submitted a receipt.
Under the “advanced reimbursement system,” Life of Georgia could generate immediate, increased take-home pay for the employee. This allowed the employees to enjoy the increased net income each pay period regardless of whether they ever incurred any medical expenses. This system allowed Life of Georgia to sell the Dean Brothers employees a universal life insurance policy with the payment coming from the employees’ savings. The employees, however, testified by deposition that Winsett and Bohlken did not tell them that they were buying life insurance, but instead told them that the money was going into a retirement plan that was part of the cafeteria plan. The employees stated that they were told that the retirement plan was unrelated to the insurance policy, and that the insurance policy was an extra bonus.
In May 1994, Nichols, Jones, and Pound sued Life of Georgia, Winsett, and Bohlken, alleging fraud. The fraud claim was based on the alleged misrepresentations made to the Dean Brothers employees concerning the validity of the cafeteria plan and the misrepresentation that if they participated in the plan they would secure a retirement plan and receive an insurance policy as a bonus, when, in fact, all they received was a life insurance policy. Life of Georgia, Winsett, and Bohlken moved for a summary judgment; the trial nourt granted the motion and entered a judgment in favor of Life of Georgia, Winsett, and Bohlken.
A motion for summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as. a matter of law. Hinkle. If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to go forward with evidence creating a genuine issue of material fact. Id. In order to defeat a properly supported summary judgment motion, the nonmovant must create a genuine issue of material fact by presenting substantial evidence. Id.
The elements of a fraud action are: “(1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) acted upon by the opposite party; and (4) reliance by the complaining party which was justifiable under the circumstances.”[1] McAlister v. Deatherage, 523 So.2d 387, 391 (Ala.1988).
*1130 In its summary judgment, the trial court first ruled that, as a matter of law, there was no fraud, because, it said, the Dean Brothers employees knew the nature of what they were purchasing. This factual conclusion is not supported ■ by undisputed fact.
The Dean Brothers employees testified that Winsett and Bohlken had told them that if they participated in the cafeteria plan they would receive retirement benefits, more money in their paychecks, and would receive an insurance policy as a bonus. They further testified that they were told that the retirement account was separate from the insurance policy. The employees say they were led to believe that the cafeteria plan was valid, when, in fact, it was not. Although the employees did receive more money in their paychecks and knew that they had received, a life insurance policy, they say they were not told that the insurance policy was the retirement plan.
In fact, Bohlken testified in deposition that he used the term “retirement plan” in selling the life insurance policy. Life of, Georgia’s § 125 enrollment documents also refer to the life insurance as a “supplemental Retirement/Social Security Offset Plan” rather then identifying the product as life insurance. Based on the foregoing, we find that the court incorrectly ruled that as a matter of law there was no misrepresentation of a material fact and that the Dean Brothers employees knew exactly what théy were getting.
The trial court also found that there could be no misrepresentation, because, it said, Life of Georgia’s universal life insurance policy was, in fact, a type of retirement plan. The erroneous nature of that finding is best supported by an illustration of a cash value schedule found in Nichols’s policy. The statement showed that if Nichols, beginning at age 39, pays $156 per year into the policy, he is guaranteed that, when he reaches age 65, the policy will have a cash value of $1,127—Nichols, at that point, will haye paid $4,056 into the policy. This illustration demonstrates that the universal life insurance policy is not a retirement plan because of the inherent cost of the insurance. Further, before establishing the “retirement plan” for Nichols, Life of Georgia erroneously calculated that his retirement benefits at age 65 woüld be $15,115.84. The trial court erred when it determined that the universal life insurance policy was, in fact, a retirement plan.
The court also held that, as a matter of law, the Dean Brothers employees did not justifiably rely on the misrepresentations of Winsett and Bohlken, because, it said, the employees were in possession of promotional materials that stated that life insurance was the basis of the retirement plan, they signed applications for life insurance, and they received life insurance policies.
The record reflects that the promotional material referred to by the court does not specifically state that the Dean Brothers employees’ retirement plans were to be funded by life insurance. The 11-page brochure makes a one-time reference to “valuable cash value life insurance” as being something the employee could purchase. The brochure does not state that the cash value life insurance is the retirement plan. Further, none of the Dean Brothers employees saw the brochure when they signed up for the “retirement plan.”
Even if the material had clearly stated that the life insurance was the funding mechanism for the retirement plan, the Dean Brothers employees still could have justifiably relied on the oral representations made by Winsett and Bohlken that the insurance policy and the retirement plan were separate entities.
In Woodall v. Alfa Mutual Ins. Co., 658 So.2d 369 (Ala.1995), our supreme court addressed the issue whether a plaintiff can justifiably rely on oral misrepresentations when they are .contradicted by statements contained in printed material provided to the plaintiff. Woodall alleged that Alfa’s agent misrepresented to him that his commercial liability insurance policy provided coverage for liability under Alabama’s Dram Shop Act, when, in fact, the policy specifically excluded *1131 coverage for actions filed pursuant to that Act. Alfa argued in its motion for summary-judgment, which was granted, that under the circumstances there could be no justifiable reliance on its agent’s statement. Our supreme court reversed, ruling that Woodall could have justifiably relied on the representations of the agent in spite of the language of the exclusions contained in the policy, stating:
“Although we have held that the language limiting the exclusion to one ‘in the business of selling alcohol unambiguously makes the exclusion applicable to Woo-dall’s Quick-Stop, a jury could find that the alleged representations by Tubbs were sufficiently plausible to explain away that language, and that, therefore, Woodall could have justifiably relied on Tubbs’s alleged representation that the exclusion did not apply to Woodall’s Quick-Stop because he could have understood his Quick-Stop to be simply a grocery store that sold beer.”
Id., at 375.
The plaintiffs stated that Life of Georgia misrepresented to them that the cafeteria plan would provide them retirement benefits and that the retirement plan was in no way related to the insurance policy that had been promised as a bonus. The Dean Brothers employees’ tax savings generated by the cafeteria plan were, in fact, used to purchase a universal life insurance policy. Therefore, even though the Dean Brothers employees may have signed insurance applications and received insurance policies, it was clearly a jury question as to whether the employees had justifiably relied on the statements made by Winsett and Bohlken.
The court further held that, as a matter of law, the Dean Brothers employees had suffered no injury. This holding is not supported by the facts and the law. It is undisputed that the employees paid money to Life of Georgia for life insurance premiums. These monies were generated through Dean Brothers’ defective cafeteria plan that was established by Life of Georgia. The employees say it was represented to them that their money was being placed in a retirement fund, when in actuality their money was being used to purchase a life insurance policy. A jury could find that the employees were damaged by being induced to pay for life insurance policies when they had been led to believe that they were getting much more.
This conclusion is equivalent- to our supreme court’s ruling in Boswell v. Liberty National Life Ins. Co., 643 So.2d 580 (Ala.1994), wherein the court specifically ruled that payment of unnecessary premiums is sufficient harm or injury to support a cause of action for fraud. A jury could find that the Dean Brothers employees were injured by the misrepresentations; the trial court erred in holding otherwise.
The court additionally held that the employees’ claim was barred by the applicable two-year statute of limitations. § 6-2-38(í), Ala.Code 1975. A fraud claim, however, does not accrue until the injured party discovers or should have discovered the facts constituting the alleged fraud. § 6-2-3, Ala. Code 1975. A fraud is deemed to have been discovered when it ought to have been discovered; “that is, at the time of the discovery of facts that, on the part of a person of ordinary prudence, would provoke inquiry that, if followed up, would lead to the discovery of the fraud.” Fabre v. State Farm Mutual Automobile Ins. Co., 624 So.2d 167, 168 (Ala.1993). The question of when a plaintiff discovered or should have discovered an alleged fraud is usually a question to be determined by the jury. Id. The question of when a plaintiff should have discovered an alleged fraud should be taken away from the jury and decided as a matter of law only when the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. McGowan v. Chrysler Corp., 631 So.2d 842 (Ala.1993). Fraud is discovered as a matter of law when one receives documents that would put one on notice of fraud. Fabre, supra.
The court based its determination on the conclusion that the employees should have discovered the alleged fraud in April 1991, when they received their life insurance policies. As previously stated, this case is not about whether the employees knew they had life insurance policies, because they readily *1132 admit that Winsett and Bohlken had told them they were receiving life insurance as a bonus. The pertinent question concerning notice is whether the employees knew that their retirement plans were the funding mechanism for the life insurance policies and that they were not receiving the policy as a bonus, as Winsett and Bohlken had represented. A jury could find that the employees were not put on notice of a fraud until they became aware that the cafeteria plan was defective. The court erred in holding that as a matter of law the statute of limitations barred the claim.
For the foregoing reasons, we conclude that the court erred in entering a summary judgment in favor of Life of Georgia, Win-sett, and Bohlken. The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.

. We note that in Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997), our supreme court *1130 discarded the "justifiable reliance” standard and returned to a "reasonable reliance” standard. However, the new standard applies to all fraud cases filed after March 14, 1997, and, thus, does not apply to the present case.